STATE of Minnesota, Respondent,

v.

Keith Michael ALESSO, Appellant.

No. 82–237.

Supreme Court of Minnesota.

Dec. 23, 1982.

Carolyn C. Sachs, St. Paul, for appellant.

Warren Spannaus, Atty. Gen., Tom Foley, County Atty., and Steven C. DeCoster, Asst. County Atty., St. Paul, for respondent.

OTIS, Justice.*

This is an appeal of a criminal defendant who was convicted in district court, on stipulated facts, of the crime of possession of cocaine and who was given a stay of imposition of sentence by the trial court. The case was lost by defendant at the pretrial suppression hearing; thus the use of the stipulation procedure, which we approved in *State v. Lothenbach,* 296 N.W.2d 854 (Minn. 1980). The issues on appeal are search and seizure issues relating to the police investigation that led to the discovery of the cocaine in defendant's possession. We affirm.

Late on the evening of September 3, 1981, Officer Dennis Downey, a police officer working at the State Fair, saw a Jeep with two young men in it illegally parked on the street outside the grandstand ramp area. Only cars with state fair permits are allowed to park there; this vehicle did not have a permit. In the officer's experience, the area is one where, at that time of night, there typically is a large number of juveniles drinking liquor and using drugs.

Because the car was illegally parked, Officer Downey approached and, standing on the driver's side, shined his flashlight in on the two young men. Defendant, who was 23 at the time, was seated in the driver's seat and his companion was on the passenger side. In open view Officer Downey saw that both men had, between their legs, transparent plastic cups containing an amber colored liquid. The liquid clearly was not a cola drink or 7-Up brand soda pop but conceivably could have been ginger ale. Based on his experience, Officer Downey felt that it was liquor.

When Officer Downey asked them what was in the cups, the two men said that it was pop. Officer Downey then asked to see the cups. Holding one close to his nose, he could smell the odor of liquor. At some point he asked the two if there was alcohol in the cups; defendant said, "No, some booze." When Downey asked if they had a bottle, they said no.

While talking with the two, Officer Downey observed in open view "up on the ledge in front of the steering wheel, on the driver's side" an uncased hunting knife with a blade that he estimated was 6 or 7 inches long. Downey also noted that defendant "kept on wiggling around in his seat with his hands down between his legs as if he were just very nervous, trying to put something under his leg or down under the seat." Downey then shined his flashlight on that area and saw defendant move his right hand to his right pocket as if he was either reaching for something or trying to hide something. He saw part of something but could not tell what it was because he was on defendant's left and the object was in defendant's right pants pocket. Downey testified that he did not think it was a bottle or drugs but thought it might be a weapon. Quickly and apparently in one motion he brushed away defendant's hand, reached in, grabbed the object, and pulled it out.

The object was a small transparent plastic bag containing a small package made

* Retired Justice acting pursuant to Minn.Stat. § 480.21 (1980).

from folding a piece of paper from a cigarette package. Officer Downey asked defendant what it was, and defendant said that it was not his and that he did not know. Downey testified that he was not sure that the package contained contraband when he opened it, but he apparently suspected that it did.

Opening it carefully, he found that it contained a white powdered substance. Defendant was then arrested for possession of a controlled substance. Expert analysis later revealed that the package contained .16 grams of cocaine.

■ Our analysis of Officer Downey's investigation step by step convinces us that the trial court properly ruled that the officer did not violate defendant's fourth amendment rights.

(1) *The stop.* Officer Downey was justified in approaching the Jeep, since it was illegally parked. *State v. McKinley,* 305 Minn. 297, 232 N.W.2d 906 (1975). Indeed, in *State v. Vohnoutka,* 292 N.W.2d 756 (Minn.1980), we indicated that generally it does not constitute a temporary seizure for an officer to simply walk up and talk to a person standing in a public place or to a driver sitting in an already stopped car. *See* 3 W. LaFave, *Search and Seizure,* § 9.2(g) (1978).

(2) *Shining the flashlight into the car.* In numerous cases we have upheld against fourth amendment challenge the practice of police officers routinely shining flashlights into automobiles, the only exception being when the officers unlawfully acquire their position vis-a-vis the vehicles, as when they unlawfully stop cars. *State v. Vohnoutka,* 292 N.W.2d 756 (Minn.1980). *See also* 1 W. LaFave, *Search and Seizure,* § 2.2(b) (1978).

(3) *Investigating possible open bottle violation.* Without entering the vehicle, Officer Downey saw, in open view,[1] that the two men had possession of transparent plastic cups containing an amber colored liquid. Officer Downey felt that the substance in the cups was liquor. He apparently based this on his experience, on the appearance of the liquid, and on the time and place of his observations.

The general question of whether an officer had a sufficient basis for a determination that an object possessed by a person was an illegal substance is discussed in 1 W. LaFave, *Search and Seizure,* § 3.6(b) (1978). One of the leading Minnesota cases is *State v. Buchwald,* 293 Minn. 74, 196 N.W.2d 445 (1972). That case arose from a drug arrest of the defendant following an investigation of reported drug use and contributing to the delinquency of minors by a rock musical group staying at a Bloomington motel. One question on appeal was whether the undercover officer who arrested the defendant had probable cause to believe that hand-rolled cigarettes which he observed in open view in the defendant's possession in a motel room contained marijuana. We concluded that, under all the circumstances, the officer did have probable cause. Those circumstances included the officer's experience, the fact that hand-rolled cigarettes

1. We use the term "open view" rather than "plain view" to describe the officer's observations in order to avoid confusion with the "plain view" seizure doctrine. The following discussion from *State v. Yaeger,* 277 N.W.2d 405, 407 (Minn.1979), bears repeating:

As Judge Moylan points out in his article on the doctrine, "The hardest conceptual problem attending the plain view doctrine is to grasp that it is not a universal statement of the right of a policeman to seize after seeing something in open view; it is rather a limited statement of that right in one of several instances—following a valid intrusion." Moylan, *The Plain View Doctrine,* 26 Mercer L.Rev. 1047, 1096. Moylan isolates two types of observations of items in open view which are not covered by the plain-view doctrine. The first is the nonintrusive situation, where the police see seizable evidence in open view in a constitutionally nonprotected area, *e.g.,* an open field. In this situation if the police seize the evidence they do it not by virtue of the plain-view doctrine, but because "there is no constitutional provision to gainsay the seizure." *Id.,* p. 1097. The second situation is the preintrusive situation, where police stand on the outside of a constitutionally protected area and look in and see seizable items in open view. In this situation the police may seize the evidence without a warrant only if there is "an additional legal predicate for the intrusion necessary to effect a seizure." *Id.,* p. 1100.

today often contain unlawful marijuana and seldom contain lawful tobacco, and the officer's knowledge that his department had solid information that other members of defendant's group had possessed and had been using marijuana that night in the same motel.

■ In this case the officer knew from the color of the liquid that the liquid was not a cola drink and that it did not look like 7-Up brand pop. He admitted that it could have been ginger ale but he felt that it was liquor. Given his experience, his observations, and the time and place of the observations, we believe that the officer was justified in believing that the liquid was liquor.

If this is true, then the officer had probable cause to believe that defendant was violating the open-bottle law, Minn.Stat. § 169.122 (1980), and he could have searched the car for other evidence relating to the open-bottle violation. *State v. Veigel,* 304 N.W.2d 900 (Minn.1981); *State v. Johnson,* 277 N.W.2d 346 (Minn.1979); *State v. Ellanson,* 293 Minn. 490, 198 N.W.2d 136 (1972). He also could have custodially arrested defendant and searched both defendant and the passenger compartment of the car incident to the arrest. *State v. Frazier,* 318 N.W.2d 42 (Minn. 1982); *New York v. Belton,* 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981); 2 W. LaFave, *Search and Seizure,* §§ 5.5(a), 7.1 (1978 & Supp.1982).

Rather than do that immediately, Officer Downey acted more prudently and asked defendant to give him the cup so that he could smell its contents. This confirmed his earlier belief. Then when he asked defendant if it was liquor, defendant admitted that it was "booze."

■ (4) *Seizing the package.* Before he had an opportunity to decide whether to search the car further, whether to arrest defendant and his companion and search them further, or whether to merely issue citations, Officer Downey noticed that defendant was either trying to conceal or remove an object of some sort from his right pocket. Officer Downey testified and the trial court found that he believed this might be a weapon. Even apart from his earlier observations concerning the open-bottle violation, the officer, having lawfully approached defendant, was justified in grabbing the object if he reasonably suspected that it might be a weapon and that defendant might be dangerous. *Adams v. Williams,* 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d (1968); 3 W. LaFave, *Search and Seizure,* § 9.4(a), at pages 117–118 and note 42 (1978).

In a typical pat-down frisk, only certain "tactile sensations produced by the patdown will justify a further intrusion into the clothing" to seize the object and the "better view" is that "a search is not permissible when the object felt is soft in nature." 3 W. LaFave, *Search and Seizure,* § 9.4(c) at 130 (1978). *See State v. Ludtke,* 306 N.W.2d 111 (Minn.1981) (while plastic bag of powder was soft and presumably did not feel like a weapon through the clothing, the officer was justified in reaching in and seizing it because he had already lawfully found a plastic bag of marijuana in the defendant's other pocket and therefore could assume that this packet which he felt also contained drugs); *State v. Bitterman,* 304 Minn. 481, 232 N.W.2d 91 (1975) (seizure of prescription bottle, which was a hard object that, when felt through the clothes, the officer thought might be a weapon); *State v. Gannaway,* 291 Minn. 391, 191 N.W.2d 555 (1971) (pipe).

This case is different because the defendant made a furtive movement of his hand toward the pocket, causing the officer to suspect that he might be reaching for a weapon. Acting quickly, the officer simply brushed defendant's hand aside, reached in and pulled out the object defendant was either concealing or grabbing. It seems clear that the officer was justified in reaching into the pocket in these circumstances, and we believe it would be unrealistic to say that he should have carefully felt the object and determined whether it might be a weapon before he removed it. As stated in 3 W. LaFave, *Search and Seizure,* § 9.4(d)

at page 132 (1978), "[T]he act of reaching into the pocket and removing the contents is essentially a single act, so that it is unrealistic to require the officer to re-evaluate the available facts after putting his hand into the pocket."

 (5) *Opening the package.* The final issue is whether Officer Downey was justified in opening the package. Generally, the officer who removes an object in a weapons search should not be permitted to open the object if it is clear upon observing it that it is not a weapon and does not contain a weapon. *Id.*

However, under the "plain-view" seizure rule, referred to earlier in Note 1, if it was "immediately apparent" to the officer that the object removed, although not a weapon, was contraband, then the officer was justified in opening it. 2 W. LaFave, *Search and Seizure,* § 6.7(b) (1978).[2]

 We may have a better understanding of when it is "immediately apparent" that an object is contraband once the United States Supreme Court has decided a case in which it has granted certiorari. That case is *Brown v. State,* 617 S.W.2d 196 (Tex.Cr.App.1981), *cert. granted,* —— U.S. ——, 102 S.Ct. 2926, 73 L.Ed.2d 1328 (1982). In that case an officer lawfully stopped the defendant's car as part of a license check of all cars being operated in a certain block in East Fort Worth and asked him to produce his license. The defendant put his hand in his right front pocket of his trousers and when he removed it there was a dollar bill in his hand and a small green tied-off uninflated balloon stuck between his fingers. The officer eventually arrested defendant for not having a license and seized the balloon. It was subsequently found to contain heroin. The decisive issue on appeal to the Texas Court of Criminal Appeals was whether it was "immediately apparent" to the officer that the balloon contained contraband. The court, with three judges dissenting from the denial of the state's motion for rehearing, ruled that it was not "immediately apparent." [3]

Here we are not dealing so much with permanent seizure but with inspection or examination of objects in plain view. Professor LaFave states that "[w]hile it is impossible to reconcile all of the decisions on this point, many of which do not articulate a clear rationale, most of the cases can be explained as follows: the minimal additional intrusion which results from an inspection or examination of an object in plain view is reasonable if the officer was first aware of some facts and circumstances which justify a reasonable suspicion (not probable cause, in the traditional sense) that the object is or contains a fruit, instrumentality, or evidence of crime." 2 W. LaFave, *Search and Seizure,* § 6.7(b) at page 482 (1978).

In this case the officer testified that he was not sure that the package contained contraband when he opened it; however, he apparently suspected that it contained contraband.[4] We believe that the facts exist-

---

**2.** The "plain-view" seizure rule, as explicated in *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), requires a prior justification for the intrusion and an inadvertent discovery of the evidence, the incriminating nature of which is immediately apparent to the officer. *See State v. Smith,* 261 N.W.2d 349 (Minn.1977); *State v. Streitz,* 258 N.W.2d 768 (Minn.1977). Only the requirement that the incriminating nature of the object be "immediately apparent" is involved in this case.

**3.** The United States Supreme Court hinted at the standard it will use in *Payton v. New York,* 445 U.S. 573, 587, 100 S.Ct. 1371, 1380, 63 L.Ed.2d 639 (1980), when it stated that the seizure of property in plain view "is presumptively reasonable, assuming that there is *proba-*

*ble cause to associate* the property with criminal activity * * *." (Emphasis added.)

**4.** If the officer did not subjectively believe or suspect that the package contained contraband, the examination of the package still might be sustained on the theory that the test of whether there is probable cause or reasonable suspicion is an objective test. *See,* in this respect, *Scott v. United States,* 436 U.S. 128, 98 S.Ct. 1717, 56 L.Ed.2d 168 (1978) (fact that officer does not have the state of mind which is hypothecated for the reasons which provide the legal justification for the officer's action does not invalidate the action as long as the circumstances, viewed objectively, justify the action), discussed at 1 W. LaFave, *Search and Seizure,* § 1.2(g) (Supp.1982). *But see DiPasquale v.*

ing at the time justified the officer's decision to open the package. Cocaine is commonly packed in little folded paper bindles and kept in plastic bags. It was also clear to the officer that defendant had been trying to conceal the package. The officer could also take into account the defendant's disclaimer of ownership and knowledge of the contents of the package.

In summary, Officer Downey, without benefit of time to go through a step-by-step analysis as we have done, approached the car because of the parking violation, talked with defendant, investigated the apparent open-bottle violation, then acted quickly when it appeared that the defendant might be reaching for a weapon. An after-the-fact step-by-step analysis of what the officer did indicate that he acted reasonably and without violating defendant's fourth amendment rights as the United States Supreme Court and this court have interpreted them.

Affirmed.

PETERSON, J., took no part in the consideration or decision of this case.

*State,* 43 Md.App. 574, 406 A.2d 665 (1979) (holding that although objectively there was probable cause to believe that the bag contained marijuana, the officer could not arrest the defendant for possessing the bag because the officer did not subjectively believe or even suspect that the bag contained marijuana), discussed in 1 W. LaFave, *Search and Seizure,*

§ 3.2 at pages 74–75 and note 51.1 (Supp.1982). We have relied on the *Scott* case in a number of cases to uphold searches on objective grounds. *See, for example, State v. Ludtke,* 306 N.W.2d 111, 113 (Minn.1981). Here we believe that objective facts justified the opening of the package.