STATE of Minnesota, Respondent,

v.

**Tia Vonray McBROOM, Appellant.**

No. C8–86–129.

Court of Appeals of Minnesota.

Oct. 21, 1986.

Hubert H. Humphrey, III, Atty. Gen., Tom Foley, Ramsey Co. Atty., Clayton M. Robinson, Jr., Asst. Co. Atty., St. Paul, for respondent.

Stephen W. Cooper, St. Paul, for appellant.

Heard, considered and decided by POPO-VICH, C.J., and SEDGWICK and NIER-ENGARTEN, JJ.

## OPINION

NIERENGARTEN, Judge.

Appellant Tia McBroom was convicted of two counts of murder in the second degree, Minn.Stat. § 609.19(1), 609.05 (1984), for being an accomplice in the shooting deaths of two men in a St. Paul nightclub. McBroom challenges the sufficiency of the evidence and makes several other contentions with respect to her claim that she was denied a fair trial. We affirm.

## FACTS

In the evening of April 15, 1985, Perry Miller, Loland Brian Dungey and Michael Messenger were at Sylvia's on Cedar, a nightclub in downtown St. Paul. During the evening, David Sutherlin and Tia McBroom arrived to celebrate Tia's birthday. They were joined by David's brother, Reggie Sutherlin, Calvin Washington and their girlfriends.

Miller and David Sutherlin got into a fight and Reggie jumped on Miller's back. Reggie was ordered to leave and as he did he threatened Miller's life.

David Sutherlin, Washington, Messenger, McBroom and several others went outside. Miller remained inside. Messenger overheard David Sutherlin tell a female sitting in his car, which was parked across the street, to "go get my shit." Messenger did not see who the woman was, but the State argued that it was Tia McBroom. The woman drove away. Messenger testified that he understood David to be talking about retrieving a weapon. Another witness, Lucky Rosenbloom, testified that it was Reggie Sutherlin who asked his girlfriend, sitting in his car, to get his "shit."

Reggie went to his white Cadillac, which was double-parked in front of Sylvia's, and pulled out a gun wrapped in a towel from the trunk. Several people saw Reggie return the towel to the trunk after about five minutes. Crucial to the State's theory was that the gun was also with the towel when it was replaced in the trunk. Michael Messenger testified that Reggie returned the towel with the gun. Several other witness-

es testified that Reggie did return the object. One of them, Carol Soto, was in Sylvia's and testified that Reggie's gun in the towel was larger than State's Exhibit # 5, which was a handgun later recovered from Michael Messenger and claimed to be the murder weapon. Another witness, Loland Dungey claimed that Reggie did not return the gun to his car but instead passed it to David Sutherlin. However, his testimony was not certain and he admitted he was presuming this.

Reggie went up to a large picture window at Sylvia's and continued to threaten Miller who was still inside Sylvia's at the window. Miller went to a phone booth and called a friend to bring a gun because he feared for his life.

Reggie, David, Messenger and Washington re-entered Sylvia's and Reggie continued to threaten Miller. They went back outside. Reggie left and David, Messenger and Washington returned. David and Miller got into another argument and David and Messenger then left again.

Outside, McBroom was standing across the street next to David's car and called to David. He crossed the street and walked over to McBroom as Messenger followed approximately eight feet behind. David's back was turned to Messenger, but the State theorized that McBroom passed David a handgun at this point. Messenger did see that McBroom had something in her hand while she was across the street. Messenger also testified that David did not have anything in his hand initially but he suddenly produced a gun and pointed it at Messenger. David crossed the street, still pointing the gun at Messenger. McBroom was observed pulling on David's arm as they crossed the street. She tried to pull him away from the door to Sylvia's and was overheard saying, "Let me do it. Don't do it." The State contended that McBroom's statement was made to David and evidenced her intention of killing Miller herself; McBroom contended the statement was made to Messenger and was evidence that she was telling Messenger that she alone could persuade David not to re-enter Sylvia's.

David, McBroom and Messenger then entered Sylvia's. McBroom and David ran towards Miller. One witness testified that McBroom took a swing at Miller. Two to three seconds later, several witnesses testified that David began shooting Miller at close range, approximately 18 to 24 inches away. Messenger wrestled with David and got the gun. David ran, pursued by Messenger. Calvin Washington then drove up and David got in the car and they fled. Miller died as a result of the shootings and a band member at Sylvia's, Vincent Jones, also died. Jones apparently was struck by a stray bullet.

The police arrived within seconds of the shooting. As they approached Sylvia's, Reggie's car pulled away. It was stopped a few blocks later along with David's car which was being driven by McBroom. A search of Reggie's car did not reveal a gun. When McBroom was stopped, she gave different responses as to her identity. She was taken to police headquarters for questioning and in a written statement said that she was at Sylvia's, left at 11:00 p.m. and was going around the corner before being picked up by the police. She was released at that time. David Sutherlin was later found hiding in the trunk of a friend's car and was promptly arrested.

On June 11, 1985 McBroom had been arrested as an accomplice to the murders and was in jail. She called St. Paul Police Sergeant Dennis Wilkes and stated that "Dino Westerby" supplied David the gun. When Sgt. Wilkes indicated that witnesses had observed her give the gun, she stated "all right" and hung up. McBroom did not testify at trial. She was acquitted of two counts of first degree murder, but was convicted of two counts of second degree murder.

## ISSUES

1. Was the evidence sufficient to convict appellant of murder in the second degree?

2. Did the trial court abuse its discretion in denying appellant's request for additional instructions following the jury's request for instructions after it retired?

3. Did the trial court err in admitting appellant's statements following her brief detention the night of the shootings?

4. Did the trial court abuse its discretion in denying a defense request to examine a juror for possible prejudice after the juror had seen a witness in the hotel where the jury had retired?

5. Did the trial court abuse its discretion in granting the jurors' request to rehear the testimony of three witnesses?

6. Did the trial court abuse its discretion in admitting medical testimony and autopsy photographs?

## ANALYSIS

### I.

The State's case hinged primarily on the testimony of Michael Messenger. The State claims circumstantial evidence established McBroom was an accomplice to David Sutherlin by furnishing him the murder weapon by reason of the following:

1) McBroom arrived at Sylvia's with David Sutherlin. 2) McBroom left after the initial fight inside the nightclub. 3) McBroom was standing next to David Sutherlin's car several minutes after he had earlier told a female (presumably McBroom) to get his "shit" which the evidence showed referred to a gun. 4) McBroom called to David Sutherlin and was holding an object in her hand. 5) After meeting with David Sutherlin, he appeared abruptly with a gun in his hand. 6) McBroom told David Sutherlin "Don't do it, let me do it." 7) McBroom entered Sylvia's with David Sutherlin and took a swing at Miller. 8) McBroom drove David Sutherlin's car from the scene immediately after the shootings. 9) McBroom gave several identities after she was stopped. 10) McBroom made a written statement that she was at Sylvia's, left at 11:00 p.m. and was going around the corner. 11) McBroom called the police and attempted to blame someone else for giving David the gun. The State claims that this was evidence sufficient for the jury to infer that McBroom did provide David a gun.

In reviewing a jury's verdict, we must determine whether, under the facts in the record and any legitimate inferences that can be drawn from them, a jury could reasonably conclude that the defendant was guilty of the offense charged. *State v. Merrill*, 274 N.W.2d 99, 111 (Minn.1978). The evidence must be viewed in the light most favorable to the prosecution and it is necessary to assume that the jury believed the State's witnesses and disbelieved any contrary evidence. *State v. Wahlberg*, 296 N.W.2d 408, 411 (Minn.1980).

Circumstantial evidence in a criminal case is entitled to as much weight as any other kind of evidence so long as the circumstances proved "are consistent only with defendant's guilt and inconsistent with any rational hypothesis except that of his guilt." *State v. Threinen*, 328 N.W.2d 154, 156 (Minn.1983). *See State v. Jacobson*, 326 N.W.2d 663, 666 (Minn.1982). The "jury is in the best position to evaluate the circumstantial evidence surrounding the crime, and its verdict is entitled to due deference." *State v. Race*, 383 N.W.2d 656, 662 (Minn.1986).

The thrust of McBroom's insufficiency argument is that 1) the evidence did not show she provided the gun; 2) the evidence did not establish the requisite intent; and 3) the evidence showed she made a reasonable effort to prevent the crime. Giving due deference to the jury's verdict, we reject McBroom's contentions.

1. With regard to the claim that she did not supply the gun, McBroom claims among other things that Reggie was more likely the source of the gun. However, almost every witness stated that the object in the towel was returned to the trunk. Further, no witness observed Reggie pass a gun to David Sutherlin. The speculation McBroom asks this court to indulge in does not rationally support her hypothesis; the

jury was presented with the same contention and chose to believe the State's witnesses. We recognize that there was no direct evidence that McBroom handed David the gun. However, the jury was in the best position to evaluate Michael Messenger's testimony and could conclude from this testimony, as well as from several other witnesses, that McBroom did provide David Sutherlin with the gun. The circumstantial evidence relied on by the State is consistent with guilt and inconsistent with any other rational hypothesis.

2. McBroom was convicted as an accomplice pursuant to Minn.Stat. § 609.05. Subdivision 1 of this statute provides "A person is criminally liable for a crime committed by another if he intentionally aids, advises, hires, counsels, or conspires with or otherwise procures the other to commit the crime." Under Subdivision 2, a person is "also liable for any other crime committed in the pursuance of the intended crime if reasonably foreseeable by him as a probable consequence of committing or attempting to commit the crime intended."

■ If the accused plays at least some knowing role in the commission of the crime and takes no steps to thwart its completion, a conviction as an aider may be upheld. *State v. Jones*, 347 N.W.2d 796, 801 (Minn.1984). "[C]riminal intent may be inferred from presence, companionship and conduct before and after the offenses are committed." *State v. Goodridge*, 352 N.W.2d 384, 389 (Minn.1984).

■ Reviewing the evidence most favorable to the State shows that McBroom knew that David had been in a fight and later provided assistance to him by providing the gun. Given the circumstances that night, it was foreseeable that David would use that gun against Miller. Further, McBroom was heard making statements which could be construed as asking to commit the shootings herself. Her conduct after the murder could also be construed as tending to show she was criminally liable. Under these facts the verdict must be sustained.

■ 3. McBroom also claims that under Minn.Stat. § 609.05, subd. 3 she had abandoned her purpose and made a reasonable effort to prevent the commission of the crime because there is evidence that could be construed that she was attempting to persuade David Sutherlin not to commit the shootings. Her true intent, based on the evidence, was for the jury to determine.

## II.

■ During deliberations the jury sent the following four questions to the court which responded as follows:

[1] In subdivision 2, is it possible all four counts can be charged because of the foreseeable clause? The answer is, the court does not understand the question.

[2] Is the second degree automatically included in a verdict of first degree? The answer is yes.

[3] In Subdivision 3, if she made a reasonable effort, is she excused from all four charges or just premeditation. The answer is, all four charges.

[4] What is the definition of reasonable effort. That is a fact question for the jury to determine.

Defense counsel then requested that the court instruct the jury that the burden of proof in establishing lack of reasonable effort was on the State. The trial court denied the request.

McBroom's contention is answered by Minn.R.Crim.P. 26.03, subd. 19(3)2 which states "The court need not give additional instructions beyond those specifically requested by the jury, but in its discretion the court may also give or repeat other instructions to avoid giving undue prominence to the requested instructions."

We also note the jury's questions did not relate to the burden of proof issue. Further, the jury was adequately instructed on the burden of proof. There was no error in not giving the requested supplemental instructions.

### III.

When McBroom was stopped and detained shortly after the shootings, she was given the following Miranda warning:

No. 1 You have the right to remain silent and refuse at any time to answer any questions asked by a police officer

No. 2 Anything you say anything you do or say can be used against you

No. 3 You have the right to talk to a lawyer and to have the lawyer with you during any questioning

No. 4 If you cannot afford to hire a lawyer one will be appointed for you by a judge, *if you appear in court,* and you may remain silent until you have talked with him.

(Emphasis added). Appellant claims warning four contains an improper warning premising her right to appointed counsel on a future appearance in court.

▆ It is well settled that the Miranda warnings need not be given in any precise formulation. *California v. Prysock,* 453 U.S. 355, 360, 101 S.Ct. 2806, 2809–10, 69 L.Ed.2d 696 (1981). Nevertheless, a criminal defendant is not adequately informed of the right to the presence of appointed counsel prior to and during interrogation if the reference to the right to appointed counsel was linked with some future point in time after the police interrogation. *Id.* at 361, 101 S.Ct. at 2810; *see United States v. Garcia,* 431 F.2d 134 (9th Cir.1970). We think the warning given here was improper.

▆ Nevertheless, the inadequate warning in this case does not mandate a new trial. The only statement appellant gave in response to the warning was that she was at Sylvia's, she left around 11:00 p.m. and was just driving around the corner. This was not damaging evidence, although it was used by the prosecution. There was no reasonable possibility the error complained of might have contributed to the conviction. *State v. Larson,* 389 N.W.2d 872 (1986). *See Chapman v. California,* 386 U.S. 18, 23, 87 S.Ct. 824, 827–28, 17 L.Ed.2d 705 (1967).

### IV.

During deliberations the bailiff informed the trial court that Michael Messenger had been observed by a juror in the hotel where the jury was retiring. Messenger was visiting his brother who had been a registered guest there.

Defense counsel asked the court to have the juror examined to determine possible prejudice. The court denied the request but did question the bailiff on the record. The bailiff said he was with the juror and that the only contact between the juror and Messenger was visual. The juror stated to the bailiff, "I know him. You know, he looks familiar." The juror then said "I believe he's a witness * * * I believe it's Messenger." The juror was not nervous or upset when she made these comments.

▆ Appellant claims the court should have conducted a *Schwartz* hearing. *Schwartz v. Minneapolis Suburban Bus Co.,* 258 Minn. 325, 104 N.W.2d 301 (1960). "A *Schwartz* hearing is not mandated until a defendant establishes a prima facie case of jury misconduct. *State v. Anderson,* 379 N.W.2d 70, 80 (Minn.1985), *cert. denied,* — U.S. —, 106 S.Ct. 2248, 90 L.Ed.2d 694 (1986). To establish a prima facie case, appellant must submit sufficient evidence which, standing alone and unchallenged, would warrant the conclusion of jury misconduct. *Id.* The trial court acted properly in determining that a mere cursory observation of a witness during deliberation did not present a serious question of possible prejudice. Minn.R.Crim.P. 26.03, subd. 9.

### V.

During deliberations the jury requested that the testimony of Michael Messenger, Beatrice Watson and Kimii Porter be reread. Watson was the band's manager and was at Sylvia's; Porter was a witness who was entering Sylvia's and observed David, Messenger and McBroom crossing the street. The trial court granted the request.

McBroom claims the court abused its discretion in its ruling, that the court abused its discretion in not reading other witness' testimony, and in refusing to instruct the jury that they should remember the demeanor, delivery, behavior and actual way of the witness who originally delivered the testimony.

McBroom's first two contentions are answered in Minn.R.Crim.P. 26.03, subd. 19(2) which reads:

(2) *Jury Requests to Review Evidence.*

1. If the jury, after retiring for deliberation, requests a review of certain testimony or other evidence, the jurors shall be conducted to the courtroom. The court, after notice to the prosecutor and defense counsel, may have the requested parts of the testimony read to the jury and permit the jury to re-examine the requested materials admitted into evidence.

2. The court need not submit evidence to the jury for review beyond that specifically requested by the jury, but in its discretion the court may also have the jury review other evidence relating to the same factual issue so as not to give undue prominence to the evidence requested.

McBroom's third contention is answered in Minn.R.Crim.P. 26.03, subd. 19(3)2 which states that trial court need not give additional instructions beyond those specifically requested by the jury.

### VI.

McBroom claims the trial court should not have admitted testimony and photographs concerning the injuries to the murder victims since she was willing to stipulate that Miller and Jones died as a result of David Sutherlin's shots. McBroom has not demonstrated that the trial court abused its discretion in admitting this evidence. *State v. Nurmi*, 336 N.W.2d 65, 67 (1983).

### DECISION

Appellant's convictions for murder in second degree are affirmed.

Affirmed.