STATE of Minnesota, Appellant,

v.

**Henry Lee HART, Respondent.**

**No. C4–87–591.**

Court of Appeals of Minnesota.

Sept. 29, 1987.

Review Denied Nov. 13, 1987.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Tom Foley, Ramsey Co. Atty., Darrell C. Hill, Asst. Co. Atty., St. Paul, for appellant.

C. Paul Jones, State Public Defender, William E. Falvey, Ramsey Cty. Public Defender, Michael F. Cromett, Asst. Cty. Public Defender, St. Paul, for respondent.

Heard, considered and decided by RANDALL, P.J., and SEDGWICK and LANSING, JJ.

## OPINION

RANDALL, Judge.

This is a state's appeal from a pretrial order suppressing three bindles of "crack" and a plastic bag of "crack" seized during a weapons search of respondent Henry Lee Hart, and suppressing statements made to police by respondent in a jail cell interview of respondent after his arrest. The appeal is authorized by Minn.R.Crim.P. 28.04,

subd. 1. Respondent also unsuccessfully moved for suppression of a glass test tube, containing cocaine residue. Respondent cross appealed admissibility of the test tube under Minn.R.Crim.P. 28.04, subd. 3. We affirm in part, reverse in part, and remand for trial.

## FACTS

At 3:30 a.m., October 7, 1986, Officer Pyka was dispatched to 728 Hague, St. Paul, on a "violent domestic" call. When Pyka arrived, two squad cars and two officers, Anderson and Schaub, were already on the scene. Pyka saw respondent and a woman, Chanel Churcher, arguing in front of the house. They saw respondent and Churcher walk to a parked car. Churcher, who was crying, got into the parked vehicle. Respondent tried to talk to her. He did not touch her. Respondent believed Churcher was intoxicated, and he did not want her to drive home. Officer Pyka claimed he saw no visible signs of Churcher's alleged intoxication.

Two officers separated Churcher and respondent. Two of the officers took respondent to the opposite side of the street. Pyka spoke with Churcher. She told him she wanted to leave and respondent would not let her leave.

Pyka and respondent went to the opposite side of the street to talk. Respondent was pacing nervously and had his left hand in his coat pocket. Pyka asked respondent to remove his hand from his pocket. Respondent hesitated before removing his hand. Officer Pyka became concerned for his own safety, and informed respondent he was going to conduct a protective search for weapons.

Pyka testified at the omnibus hearing that he had been assaulted five times in the previous six months and some of those assaults involved weapons. He testified some of the assaults occurred in the same area as this incident.

Pyka began the search by patting down the left side of respondent's jacket, starting with the pocket where respondent's hand had been. Pyka felt a six-inch long tubular object in an inside pocket of Hart's jacket. Based on previous encounters, Pyka believed the object could have been a knife, and he removed it from respondent's pocket. The object turned out to be a glass test tube containing a white residue which Pyka suspected to be narcotics.

Officer Pyka continued the pat down search to the right side of respondent's jacket. Respondent grabbed the pocket and would not allow Pyka to search it, saying, "Man, you ain't got no right to do this shit." Pyka pulled respondent's hand away, unzipped the pocket, and removed from it a clear plastic baggie containing three bindles of what Pyka believed, based on his experience, to be "crack."

Pyka arrested respondent, placed him in the squad car, and read him the *Miranda* [1] warning. Respondent made no statements at that time. At the pretrial hearing, respondent disputed Pyka's version of his (respondent's) activities prior to the search. The trial court expressly adopted Pyka's version of the facts, for purposes of its ruling.

Later that morning, Sgt. Wagner interviewed respondent in the Ramsey County Jail Annex. Wagner advised respondent of his *Miranda* rights by a preprinted form, which advised respondent of his right to an attorney as follows:

> If you cannot afford a lawyer, *one will be appointed for you by a judge if you appear in court*, and you may remain silent until you have talked to him.

(Emphasis added.) [2] Wagner testified he read the form to respondent, and respondent followed along, reading the form. Respondent read and signed the form in Wagner's presence. Respondent did not ask to talk to an attorney. During cross examination at the pretrial hearing, Wagner agreed that the *Miranda* warning form, form number 247.1, read to respondent, which

---

**1.** *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), *reh'g denied* 385 U.S. 890, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**2.** The underlined portion is that part of the officer's *Miranda* warning from 2247.1 in issue.

resulted in the incriminating statements, has been replaced by a different form because form 247.1 was deemed inadequate.[3] During the interview, Wagner's report indicates respondent made the following statements:

> He said that he bought the drugs from a guy at the Elks' Club and uses drugs occasionally. He said that each bindle is about ¼ gram. He was using the drugs because he was upset about his girlfriend losing their baby. (She was pregnant and had a miscarriage). He uses the glass test tube to mix the drugs and make it into "crack."

The court held the test tube to be the admissible fruit of a valid weapons search. The court felt the issue of admissibility of the bindles of cocaine was close, but ruled against admissibility because Pyka "either testified or indicated [he did not feel] that that was a weapon." The court suppressed respondent's statements taken by Wagner, because of the language of the item contained in the printed *Miranda* warning "conditioning the appointment of counsel upon some further contingency, namely defendant's appearance in court." The court found the *Miranda* warning form, to which respondent responded to with incriminating statements, was defective.

### ISSUES

1. Will the suppression rulings, if erroneous, have a critical impact on the proceedings?

2. Did the trial court properly rule the test tube was the product of a proper protective weapons search and, therefore, admissible?

3. Did the trial court properly suppress the baggie of "crack," finding the officer had no reason to believe it might have been a weapon?

4. Did the trial court err by suppressing respondent's statements, based on what the court held to be an inadequate *Miranda* warning?

**3.** The inadequacy resulted from case law finding the underlined language to be arguably ambiguous and misleading as to the time when an

### ANALYSIS

#### I.

*Critical Impact*

This court, in a pretrial appeal, will reverse the trial court only if the state demonstrates, clearly and unequivocally, that the trial court erred in its judgment and that the error will have a critical impact on the outcome of the trial. *State v. Webber*, 262 N.W.2d 157, 159 (Minn.1977). The state argues that suppression of the evidence will "gut" the prosecution's case. Critical impact will be found where the lack of suppressed evidence significantly reduces the likelihood of a successful prosecution. *State v. Kim*, 398 N.W.2d 544, 551 (Minn.1987). Under the A.B.A. Standards for Criminal Justice, the prosecution may appeal the critical impact issue before trial only, "where the effect [of suppression] is to seriously impede, although not to completely foreclose, continuation of the prosecution." *Id.*

Suppression of the cocaine bindles seized during the search leaves, as the only evidence in this matter, the minute particles of cocaine residue found in the glass test tube. We find that the cocaine bindles meet the threshold test of significantly reducing the likelihood of a successful prosecution. Thus, having found critical impact, we go on to examine the suppression issues on the merits.

#### II.

*Suppression of the Test Tube*

■ Under Minn.R.Crim.P. 28.04, subd. 3, respondent cross-appealed the trial court's finding the test tube was admissible, arguing that the entire search is not justifiable as a protective search for weapons. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Based on respondent's action, Pyka's experience in that neighborhood, and Pyka's general experience on the job, Pyka's belief that the

indigent's right to court appointed counsel attached.

object he felt in respondent's pocket could be a weapon was reasonable. Only when Pyka removed the object did he determine that it was not a weapon but that, based on his experience and training, it might contain residue of cocaine or some other illegal drug.

We agree with the trial court that the search of the first pocket was justifiable under *Terry* as a protective weapons search. The search did not become improper because the object turned out to be something other than a weapon.

### III.

### Suppression of the Bindles of Crack

The trial court ruled Pyka violated respondent's rights by going on to search appellant's right pocket, where the bindles of crack were found, after having found the test tube in appellant's left pocket. The court relied on *State v. Gannaway*, 291 Minn. 391, 191 N.W.2d 555 (1971).

In *Gannaway*, Officer Pelton stopped Gannaway for driving the wrong way on a one way street. Pelton warned Gannaway to keep his hands out of his pocket, but Gannaway was determined to reach into the right pocket of his outer coat. Pelton, believing Gannaway might be armed, commenced a protective frisk of Gannaway's outer coat. Pelton felt a bulge in Gannaway's outer pocket, which he believed might be a weapon. In a further search of the pocket, he discovered the object was a corncob pipe. Unknown to Pelton, the pipe contained marijuana residue. Pelton admitted at the omnibus hearing he had no reason to believe Gannaway possessed narcotics. He continued the search for weapons. He kept the pipe and "expanded his search to other clothing * * * that gave no indication of the possible presence of a concealed weapon." *Id.* at 392, 191 N.W.2d at 556. He pulled everything out of Gannaway's pockets, and found a small bag of marijuana in Gannaway's trouser pocket. *Id.*

The court found the initial search was justified, but ruled that once the corn cob pipe was seized, the remainder of the search exceeded the scope of a weapons search. *Id.* at 393–94, 191 N.W.2d at 557. The court held that because Pelton did not know the pipe contained marijuana residue, he had no basis to conduct a search for contraband.

■ *Gannaway* is distinguishable from this case. After Officer Pyka seized the test tube, based on his experience as a police officer, he reasonably determined that the test tube might contain illegal drugs. This key element was missing in *Gannaway*, where the searching officer did not know, or suspect, that the corn cob pipe might contain marijuana residue. Here, the residue was immediately visible to Pyka, giving him, the officer, unlike in *Gannaway*, a particularized reason, based on reasonable belief, to expand his search of respondent's jacket for further contraband.

In addition, respondent's act of covering his right pocket to prevent a search, when he observed Pyka's moving in that direction, is factually similar to *State v. Alesso*, 328 N.W.2d 685 (Minn.1982). In *Alesso*, an officer found two young men drinking in a car under the grandstand at the state fair grounds. The officer had probable cause to believe the two were in violation of the open bottle law. *Id.* at 688. The officer was about to search the car when he noticed one of the suspects trying to conceal or remove an object from his right pocket. The officer testified he believed the object was a weapon. Acting quickly, the officer brushed the suspect's hand aside, reached into the pocket, and pulled out the object, which turned out to be a packet of cocaine. The supreme court found this seizure valid because the officer reasonably suspected the suspect was armed. *Id.* Respondent's grabbing his right pocket and attempting to keep Pyka from searching it was an overt movement that reasonably aroused Pyka's suspicion, similar to *Alesso*.

Once he lawfully seized suspected contraband in the weapons search, Pyka could go forward to search for additional contraband. *State v. Ludtke*, 306 N.W.2d 111, 113 (Minn.1981).

The trial court suppressed the bindles of crack, ruling the facts did not support probable cause for Pyka's search of the right pocket as Pyka could not know, with certainty [4] at the time he found the glass tube, that the residue he observed was an illegal drug. It cannot be expected or assumed that, as each individual item suspected of being drugs is removed from a specific pocket, the police will necessarily have in their immediate possession tools and chemicals needed for a thorough analysis. Based on the totality of the circumstances, and Pyka's testimony as to his training and observations as a police officer, his belief that what he observed was the residue of illegal drugs was reasonable, and justified a further search of respondent's other pockets.

## IV.

*Miranda warning*

The trial court ruled, based on *State v. McBroom*, 394 N.W.2d 806 (Minn.Ct.App. 1986), *pet. for rev. denied* (Minn. Jan. 16, 1987), that the *Miranda* warning given respondent was inadequate and, as a result, it suppressed statements made by Hart to Wagner. The warning discussed in *McBroom* is the same as the warning used here. In both cases the defendants claim the language in the written warning appears to premise the right to counsel on a future appearance in court. *Id.* at 812. In *McBroom*, this court ruled this kind of *Miranda* warning was improper. *Id.*

The state takes the position that the trial court's ruling was erroneous under the totality of the circumstances. The state claims that respondent was initially given an adequate *Miranda* warning by Pyka after his arrest, and that, once a suspect is advised of his *Miranda* rights, a new warning need not be given before each questioning. *State v. Andrews*, 388 N.W.2d 723, 732 (Minn.1986). As a result, the state claims, even if the second warning were defective, respondent was adequately advised of his rights at the time of his arrest, and the initial *Miranda* warning covers

both interviews, unless evidence shows the defective second warning confused respondent.

The state argues that the supreme court found the disputed *Miranda* form "constitutionally adequate" in *Andrews*. We note the supreme court did not address the language of the warning in *Andrews*, and there is no evidence from the *Andrews* opinion that it was the same form read to Hart.

█ We acknowledge an adequate *Miranda* warning was given at the time of respondent's arrest. However, in response to that oral *Miranda* warning, respondent said nothing. That oral warning was given hours prior to the written warning now in issue. Since the inadequate, written warning led to respondent's incriminating statements, this case comes under our holding in *McBroom*. The trial court was not clearly erroneous in suppressing the statements.

## DECISION

The trial court erred by suppressing the bindles of cocaine seized during the officer's search of respondent. The trial court properly admitted the glass test tube containing cocaine residue, and properly excluded from evidence statements made by respondent following an inadequate *Miranda* warning.

Affirmed in part, reversed in part.

---

**4.** The test tube was examined later, as is common with suspected drugs seized on the spot. The subsequent analysis confirmed Pyka's visual observation that the residue was cocaine.