STATE of Minnesota, Respondent,

v.

Warren WASSON, Appellant.

No. C7–99–199.

Court of Appeals of Minnesota.

Nov. 23, 1999.

Review Granted in part Jan. 25, 2000.

Mike Hatch, Attorney General, Natalie E. Hudson, Assistant Attorney General, St. Paul, MN; and Earl E. Maus, Cass County Attorney, Walker, MN (for respondent).

John M. Stuart, State Public Defender, Theodora Gaitas, Assistant State Public Defender, Minneapolis, MN (for appellant).

Considered and decided by SHUMAKER, Presiding Judge, DAVIES, Judge, and WILLIS, Judge.

## OPINION

DAVIES, Judge.

On appeal from a conviction of controlled substance violation in the fifth degree (possession), appellant Warren Wasson argues that the trial court should have suppressed evidence discovered during execution of a search warrant. Appellant claims that the search warrant application did not support a no-knock, nighttime search and, further, that a threshold appraisal of the situation removed justification for an unannounced entry.

Appellant also argues that the search of appellant's person was outside the scope of the search warrant, was not a valid weapons pat down, and was not a search incident to arrest.

We affirm.

## FACTS

A confidential reliable informant (CRI) reported that he purchased drugs in James Meixner's home and, while inside the home, saw drug paraphernalia. Based on the CRI's information, a police officer applied for a warrant to search Meixner's home. The officer requested a no-knock entry because "those involved with controlled substances often attempt to destroy those substances if those substances are in jeopardy of being confiscated by law enforcement officers." He also requested a nighttime search to protect the officers executing the warrant because officers had removed numerous rifles, in addition to drugs, from Meixner's home during a search three months earlier.

The district court approved a no-knock, nighttime search warrant, which was executed on October 3, 1997. The officers executing the search warrant approached the residence, made a threshold appraisal, and observed appellant and Meixner playing a game at a table. Appellant was an overnight guest at Meixner's home, staying for an indefinite period. The officers decided that their threshold appraisal did not require abandonment of the no-knock terms of the warrant.

The first officer into the residence opened the unlocked door and announced that those entering were police officers with a search warrant. Although Meixner cooperated immediately, appellant jumped up, threw a dictionary into the air, and ran into an adjacent room, where several officers struggled to restrain him. After an officer removed a Buck knife from appellant's belt, appellant clenched his hand and pushed something down the front of his pants. The officers testified that they thought appellant might be hiding a weapon. The officers wrestled appellant to the ground, handcuffed him, and removed plastic bags filled with methamphetamines from the front of his pants.

Appellant continued to struggle and to reach for something on his left side. An officer then found in appellant's pants pocket more plastic bags filled with methamphetamines and an inhaler approximately three inches long. The officers did not, however, find any weapons on appellant other than the Buck knife.

The district court denied appellant's motion to suppress the evidence obtained during execution of the search warrant. After the state dismissed charges of possession of drug paraphernalia and obstructing legal process, appellant waived his right to a jury trial and the trial court found him guilty on a charge of controlled substance violation in the fifth degree.

This appeal follows.

## ISSUES

I. Did the district court err when it denied appellant's motion to suppress evidence found during execution of the no-knock, nighttime search warrant?

II. Did the district court err when it denied the motion to suppress evidence found when the police officers searched appellant's person?

## ANALYSIS

■ When the facts are undisputed, the district court's decision whether to suppress evidence is a matter of law subject to independent review. *State v. Othoudt,* 482 N.W.2d 218, 221 (Minn.1992); *State v. Martinez,* 579 N.W.2d 144, 146 (Minn.App. 1998), *review denied* (Minn. July 16, 1998).

### I.

■ Appellant argues that the district court did not have a sufficient basis to issue a search warrant allowing a no-knock, nighttime search and that the threshold reassessment of the situation required the officers to knock upon entering. The "knock-and-announce principle forms a part of the Fourth Amendment reasonableness inquiry." *Martinez,* 579 N.W.2d at 146 (quoting *Wilson v. Arkansas,* 514 U.S. 927, 930, 115 S.Ct. 1914, 1916, 131 L.Ed.2d 976 (1995)).

■ The United States Supreme Court has recently rejected the blanket allowance of no-knock searches for felony drug investigations and has required the issuing court to review whether the facts and circumstances of a particular entry justified the unannounced entry. *Richards v. Wisconsin,* 520 U.S. 385, 395–96, 117 S.Ct. 1416, 1422, 137 L.Ed.2d 615 (1997). Under *Richards,* a no-knock entry is justified only if police officers have

> a reasonable suspicion that knocking and announcing their presence, *under the particular circumstances,* would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence.

*Id.* at 394, 117 S.Ct. at 1421 (emphasis added).[1]

■ Appellant argues that the search warrant application did not show necessity or articulate a particularized reason for a no-knock entry. The application here contains what looks like pre-*Richards* boilerplate language that "persons involved in narcotics trafficking and transactions carry firearms" and that "those involved with controlled substance often attempt to destroy those substances." Since *Richards,* this presumptive, generalized language is no longer, in itself, a sufficient, particularized reason justifying a no-knock entry. *Id.*

■ In this case, however, the search warrant application went beyond the boilerplate language and stated that officers had removed numerous weapons when they searched Meixner's home three months earlier. We conclude that when, in a felony drug investigation, an application for a search warrant covering a drug sales outlet states that firearms were recently present at the outlet, then the warrant has stated a sufficiently particularized reason to justify a no-knock entry. In our view, it is not critical that the weapons here were hunting rifles, not street weapons. Based on the facts in the current case, therefore, the no-knock provision of the search warrant was justified.

■ The Supreme Court also held in *Richards* that a police officer's decision to enter the room must be evaluated as of the time of entry. *Id.* at 395, 117 S.Ct. at 1422. In this case, the record shows that the officers reassessed the situation at the threshold and determined that nothing required them to deviate from the planned approach; they concluded that a no-knock entry was still justified because of legitimate concerns for the safety of officers and concerns that evidence could be destroyed.

■ Appellant also argues that the facts alleged in the warrant application did not justify a nighttime entry. A nighttime entry requires some showing that the war-

---

1. Before *Richards,* Minnesota courts routinely upheld no-knock search warrants based solely on a home being a drug sales outlet. *See State v. Dyer,* 438 N.W.2d 716, 719 (Minn. App.1989), *review denied* (Minn. June 9, 1989); *State v. Ailport,* 412 N.W.2d 35, 38 (Minn.App.1987), *review denied* (Minn. Nov. 18, 1987).

rant can be executed successfully only in the nighttime. *State v. Lien,* 265 N.W.2d 833, 840 (Minn.1978). In this case, the search occurred at 9:30 p.m., while the residents were still awake. Thus, some of the evils of a nighttime search were avoided. *See Ailport,* 412 N.W.2d at 37–38 (warrant executed at 8:50 p.m. was reasonable when police officers observed people entering and leaving apartment).

In addition, the officer specifically requested the nighttime search because he knew that firearms had recently been in the home. This fact supports the request for, and authorization of, a nighttime search; the police officers had a valid concern for their safety.

The premises search was lawful.

## II.

Appellant next argues that the search of his person was unreasonable and violated his Fourth Amendment rights. He claims the search of his person was not specifically listed in the warrant, was not a valid weapons pat-down search, and was not a search incident to arrest.

■■■■■ A search warrant that does not expressly allow a search of persons provides only the limited authority to detain, not search, unarmed individuals present during the execution of the warrant. *State v. Wynne,* 552 N.W.2d 218, 222 (Minn. 1996). Searches not covered by warrants "are *per se* unreasonable under the fourth amendment—subject only to a few specifically established and well-delineated exceptions." *State v. Dickerson,* 481 N.W.2d 840, 843 (Minn.1992) (quoting *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967)). Exceptions include a pat-down search for weapons and a search incident to arrest. *Terry v. Ohio,* 392 U.S. 1, 29, 88 S.Ct. 1868, 1884, 20 L.Ed.2d 889 (1968); *State v. Hardy,* 577 N.W.2d 212, 216 (Minn.1998).

■■■■■ In a pat-down search, police officers may look only for weapons that could harm the officers or others nearby. *Terry,* 392 U.S. at 26, 88 S.Ct. at 1882.

If the protective search goes beyond what is necessary to determine if the suspect is armed, it is no longer valid under *Terry* and its fruits will be suppressed.

*Minnesota v. Dickerson,* 508 U.S. 366, 373, 113 S.Ct. 2130, 2136, 124 L.Ed.2d 334 (1993) (citing *Sibron v. New York,* 392 U.S. 40, 65–66, 88 S.Ct. 1889, 1904, 20 L.Ed.2d 917 (1968)). Contraband may be seized if discovered by the police officer's "plain feel." *Dickerson,* 508 U.S. at 376–77, 113 S.Ct. at 2137 (contraband lawfully discovered when police officer "lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent"). A protective search for weapons is not improper simply because the item discovered is something other than a weapon. *State v. Hart,* 412 N.W.2d 797, 801 (Minn.App. 1987), *review denied* (Minn. Nov. 13, 1987).

■■■■■ Although appellant concedes that the officers were justified in performing a protective search for weapons on his person, he argues that the search went beyond the scope of a pat down. The testimony of the officers shows that they struggled to restrain appellant, that appellant pushed something down the front of his pants, and that the officers were unable to determine if appellant was trying to hide a weapon. Just moments before, the officers had removed a Buck knife attached to appellant's belt. The officers testified that, even after they wrestled appellant to the ground, he continued to struggle and tried to roll over and reach for something on his body.

■■■■■ The officers reasonably suspected that appellant was reaching for a weapon. The standard under the Fourth Amendment is whether the officer's actions were reasonable under the circumstances. *See Adams v. Williams,* 407 U.S. 143, 147–48, 92 S.Ct. 1921, 1924, 32 L.Ed.2d 612 (1972) (reasonable for police officers to reach into suspect's waistband when suspect did not

comply and officer reasonably believed weapon was hidden in waistband); *State v. Alesso,* 328 N.W.2d 685, 688 (Minn.1982) (police officer's reach into defendant's pocket justified when "defendant made a furtive movement of his hand toward the pocket, causing the officer to suspect that he might be reaching for a weapon"). The officers' actions in this case were reasonable and did not exceed the scope of a protective search for weapons.

Appellant further argues that the state did not prove that the officer who searched appellant immediately knew the inhaler and the plastic bag contained drugs because the searching officer did not testify. But even without that officer's testimony, the circumstances show that the officer's "plain feel" conclusion that drugs were present was inevitable.

 Finally, appellant argues that the search of his pocket after the drugs were discovered in the front of his pants was not incident to arrest because he was not immediately arrested for a controlled substance crime. A search incident to arrest is lawful if there is probable cause for the arrest. *United States v. Robinson,* 414 U.S. 218, 227–28, 94 S.Ct. 467, 473, 38 L.Ed.2d 427 (1973). Probable cause to arrest is determined by evaluating whether, in a particular circumstance and based on the police officer's experiences and observations, it is objectively reasonable for the officer to conclude that the arrested individual committed a crime. *Hardy,* 577 N.W.2d at 216. A search "incident to arrest" based on probable cause to arrest is valid even if the search occurs before the arrest. *State v. Cornell,* 491 N.W.2d 668, 670 (Minn.App.1992).

In this case, the police officers searched appellant's pockets after they struggled to restrain him, after they removed a Buck knife from his belt, after appellant made a visible effort to hide something in the front of his pants, after they found methamphetamines during a valid pat-down search for weapons, and after appellant, with handcuffs on, continued to struggle and roll over to reach for something. At that moment, the police officers had probable cause to arrest appellant and the search of his pocket was, thus, valid as a search incident to arrest.

## DECISION

The district court did not err in denying appellant's motion to suppress evidence. The search warrant application stated a sufficiently particularized reason to justify a no-knock, nighttime search. The police officers performed both a valid weapons pat down and a valid search incident to arrest.

**Affirmed.**