**CheyAnn H. DOHENY,
Petitioner, Respondent,**

v.

**COMMISSIONER OF PUBLIC
SAFETY, Appellant.**

**No. C9-84-2158.**

Court of Appeals of Minnesota.

May 21, 1985.

Samuel A. McCloud, Dean S. Grau, Minneapolis, for respondent.

Hubert H. Humphrey, III, Atty. Gen., Mary B. Magnuson, Sp. Asst. Atty. Gen., St. Paul, for appellant.

Considered and decided by POPOVICH, C.J., and WOZNIAK and FORSBERG, JJ., with oral argument waived.

## SUMMARY OPINION

POPOVICH, Chief Judge.

### FACTS

According to the trial court's memorandum: "On September 27, 1984, a Burnsville police officer was following a truck on Highway 35W within that city. The truck passed a slower moving vehicle. The officer saw the brake lights on this vehicle go off and on. The vehicle was traveling at a speed of between 40 and 45 m.p.h., according to the officer's estimate. The maximum speed limit in this area is 55 m.p.h., and the minimum speed limit is 40 m.p.h. The officer did not note any law violations, but felt the driver may have been lost. The officer turned on his red lights and stopped the vehicle."

Respondent eventually refused to take a chemical test to determine her blood alcohol content and following an implied consent hearing, the trial court rescinded the revocation of respondent's driver's license.

### DECISION

In its well reasoned memorandum, the trial court stated:

"To aid someone who is lost is commendable. However, petitioner was traveling on a limited access freeway, and, if lost, could have left the freeway at the next exit. The danger of stopping a vehicle on a freeway would seem to override a concern based on speculation or supposition. It is true that an actual violation of the traffic law need not be detectable. It is enough if the stop is based upon specific and articulable facts, which, taken together with rational inferences from these facts, reasonably warrant the stop. See *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868 [20 L.Ed.2d 889] [1968], and *State v. McKinley*, 305 Minn. 297, 232 N.W.2d 906 [1975]. Here there was no violation of law, and the surmise of the officer that petitioner may have been lost does not meet the criteria set forth above.

Accordingly the Commissioner's order must be rescinded."

The trial court correctly determined the police officer did not have a specific and articulable suspicion of a violation.

The policy of the Fourth Amendment is to minimize governmental confrontations with the individual. That policy is not furthered by permitting police officers to stop citizens not even remotely suspected of any conduct in violation of criminal or regulatory standards, simply for the well-intentioned purpose of providing directions. Moreover, however well-intentioned the stopping may have been in this case, the risk of abuse is real. The "plain view" principle has spawned numerous cases where the police officer says, "I saw him drop the package." The investigative stop authority announced in *Terry v. Ohio* has led to cases where the officer says, "He looked suspicious." The Fourth Amendment stands against initiating a new line of cases in which the officer says, "I thought he was lost."

*United States v. Dunbar*, 470 F.Supp. 704, 708 (D.Conn.) (citations omitted), *aff'd*, 610 F.2d 807 (2nd Cir.1979).

Our decision in *Kozak v. Commissioner of Public Safety*, 359 N.W.2d 625 (Minn.Ct. App.1984) does not apply in this situation. *Kozak* held the protections of the fourth amendment were not violated by a police officer's investigation of a car parked on a highway. Since *Kozak* did not involve the stop of a vehicle, it is inapplicable here.

Affirmed.