**STATE of Minnesota, Appellant,**

v.

**Kristi Lynn REESE, Respondent.**

**No. C9–86–169.**

Court of Appeals of Minnesota.

June 10, 1986.

Review Denied Aug. 13, 1986.

Hubert H. Humphrey, III, Atty. Gen., Greg Lewis, Moorhead City Atty., David J.

Hauff, Asst. City Atty., Fargo, N.D., for appellant.

Bruce Ringstrom, Moorhead, for respondent.

Heard, considered and decided by SEDGWICK, P.J., and PARKER and FORSBERG, JJ.

## OPINION

SEDGWICK, Judge.

On January 6, 1986, respondent Kristi Lynn Reese was charged under Minn.Stat. § 169.121 (Supp.1985) for driving while under the influence of alcohol. In a pre-trial order, the trial court suppressed evidence obtained during an investigatory stop of Reese's car. The State appeals. We reverse.

## FACTS

At 1:30 a.m. on a Sunday morning in January, Officers Daniel Griffin and Bruce Fleury of the Moorhead Police Department, on routine patrol, approached an intersection and observed two automobiles stopped in adjacent lanes blocking the intersection. Both had their engines running and headlights on. The car in the right-turn lane did not have its turn indicator on. The car in the driving lane to the left had the dome light on. The officers could observe a woman driver conversing with a man in the passenger seat. When neither car moved the officers thought it possible that an accident had occurred, that the woman was being accosted, or that there were car problems.

The officers then pulled the police car into the intersection at an angle that allowed the headlights to illuminate Reese's car. Reese opened her door and they spoke briefly. Fleury spoke to the male passenger while Griffin asked Reese for identification. While speaking with her, Griffin observed indicia of intoxication. At his request, Reese took a preliminary breath test and failed. A subsequent blood alcohol test revealed a blood alcohol content of .14.

## ISSUE

Did the trial court err in suppressing the evidence due to an improper investigatory stop?

## ANALYSIS

The trial court believed there were no articulable facts nor any reasonable suspicion that a violation of law had occurred and therefore granted Reese's motion to suppress. The question is whether the trial court erred in its application of the fourth amendment to this police investigation.

The law differentiates between an investigatory stop of a moving vehicle and an investigation of a stopped vehicle.

As stated in 3 W. LaFave, *Search and Seizure*, § 9.2(g) (1978), courts generally have held that it does not by itself constitute a seizure for an officer to simply walk up and talk to a person standing in a public place or to a driver sitting in an already stopped car. *See State v. Vohnoutka*, 292 N.W.2d 756 (Minn.1980); *Kozak v. Commissioner of Public Safety*, 359 N.W.2d 625 (Minn.Ct.App.1984); *Blank v. Commissioner of Public Safety*, 358 N.W.2d 441 (Minn.Ct.App.1984).

In the cases involving already stopped vehicles, it is not necessary that an officer suspect criminal activity but he may arrest a driver and seize contraband if he views it in plain sight in the vehicle.

In *State v. Vohnoutka*, 292 N.W.2d 756, a police officer walked up to a car which had just been parked in a visibly closed service station and shined the flashlight in the car, thereby observing a large quantity of marijuana. The driver was arrested and searched incident to arrest. All seized evidence was subsequently ruled inadmissible by the trial judge as being the product of search not based on probable cause. The supreme court reversed and ruled the evidence admissible because the defendant had already stopped the car when the officers approached it. In other words, it was not necessary for the officer to stop the car or temporarily seize it in order to get into a

position from which he made his observation. We note that the use of the flashlight to scan the car interior was after the officer asked the defendant if everything was all right and he said it was.

 The stop of a moving vehicle, on the other hand, requires specific and articulable facts, which, taken together with rational inferences from these facts, create a reasonable suspicion of criminal activity which warrant the stop. *See Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Doheny v. Commissioner of Public Safety*, 368 N.W.2d 1 (Minn.Ct.App. 1985); *State v. McKinley*, 305 Minn. 297, 232 N.W.2d 906 (1975). An actual violation of a traffic law is not necessary. *See Doheny*, 368 N.W.2d 1.

 The facts of this case do not present a seizure issue which would mandate fourth amendment protection. The officers did not stop the vehicle, it was already stopped. Even if they had stopped the vehicle, they articulated specific facts, i.e., they thought there was a possibility the woman driver was being accosted, which created a reasonable suspicion of criminal activity to warrant the stop.

The trial court here erroneously relied on *Doheny* to suppress the evidence. *Doheny* involved a police stop of a moving vehicle without any articulable facts creating a reasonable suspicion of criminal activity. The police thought the driver might be lost. *Doheny* is inapplicable to the facts of this case.

Here the officers did not stop the vehicles, were in a place they had every right to be, and observed the indicia of intoxication after requesting driver identification. As this court stated in *Blank:*

> In fact, it is a common practice for police officers to walk up to cars stopped in the road, in winter, especially when their engines are running and the lights are on.

358 N.W.2d 441, 442–43.

## DECISION

The trial court erred in granting the motion to suppress. Reversed.

PARKER, J., dissents.

PARKER, Judge (dissenting).

The State argues that the officers' approach of Reese's car was not a "seizure" requiring certain fourth amendment protections and that even if it was, the officers had a reasonable suspicion justifying an investigatory stop.

When the police saw the cars stopped side by side in the street and observed that neither moved through the intersection although they had the right of way, they moved their squad car in front of Reese's and shone the lights into her car. In the words of Officer Fleury, they "initiated a stop." Officer Griffin approached and asked Reese for identification, although he testified he had not intended to give her a citation.

This court recently decided two instructive cases. In *Kozak v. Commissioner of Public Safety*, 359 N.W.2d 625 (Minn.Ct. App.1984), an officer stopped to investigate a car parked on the highway shoulder. We said that in the proper performance of duties, an officer has "not only the right but a duty to make a reasonable investigation of vehicles parked along roadways to offer such assistance as might be needed * * *." *Id.* at 628.

In addition, this court found no seizure implicating the fourth amendment when an officer who observed a car parked on the roadway with the motor running and the lights on pulled up behind the car and asked to see the driver's license. *Blank v. Commissioner of Public Safety*, 358 N.W.2d 441 (Minn.Ct.App.1984). This court said:

> [I]t is a common practice for police officers to walk up to cars stopped in the road, in winter, especially when their engines are running and the lights are on. There could be mechanical problems with the car or medical problems with the driver or passengers, or a variety of reasons justifying investigation.

*Id.* at 442–43.

The case before us presents a different problem than the "stopped car" cases.

Reese's car was waiting at the intersection, not stopped beside a roadway. The positioning of the police car to block any forward movement by Reese's car classifies this as a stop, and the officers themselves considered it as such.

The question then becomes whether there was a reasonable and constitutional basis for this stop. The United States Supreme Court enunciated the standard for investigations or stops in *Delaware v. Prouse,* 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979):

> Accordingly, we hold that except in those situations in which there is at least articulable and reasonable suspicion that a motorist is unlicensed or that an automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of law, stopping an automobile and detaining the driver in order to check his driver's license and the registration of the automobile are unreasonable under the Fourth Amendment.

*Id.* at 663, 99 S.Ct. at 1401.

The Minnesota Supreme Court has also discussed justifiable "stops," adopting fourth amendment analysis from the federal courts. An automobile stop is valid if the police officer is able to state a particularized and objective basis for suspecting the person stopped of criminal activity. *State v. L'Italien,* 355 N.W.2d 709, 710 (Minn.1984) (citations omitted).

> In applying this standard, the court should consider the totality of the circumstances and should remember that trained law-enforcement officers are permitted to make "inferences and deductions that might well elude an untrained person." *United States v. Cortez,* 449 U.S. at 418, 101 S.Ct. at 695.

*State v. Kvam,* 336 N.W.2d 525, 528 (Minn. 1983) (the court reversed and remanded for trial).

The supreme court has also stated:

To lawfully stop a person for questioning, as distinct from making an arrest, a police officer must be able to point to specific and articulable facts which, together with reasonable inferences from those facts, reasonably warrant the invasion of a citizen's personal security. The intrusion cannot be based on an inarticulate hunch, and must be reasonable in light of the particular circumstances. A police officer may approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest.

*State v. Engholm,* 290 N.W.2d 780, 783 (Minn.1980) (citing *Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968)).

The United States Supreme Court stated that the demand for specificity in the information upon which police action is predicated is the central teaching of fourth amendment jurisprudence. *United States v. Cortez,* 449 U.S. 411, 418, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (citation omitted). The facts of this case present a close question. I would hold that the officers' statements that they thought Reese might have been involved in an accident, or that she might be being accosted, were too speculative to justify a stop and a request for identification.

I am not unmindful of the police officers' duty to investigate questionable situations such as this and agree that they were quite right to look into it. *See Kozak v. Commissioner of Public Safety,* 359 N.W.2d 625 (Minn.Ct.App.1984). However, an offer of aid would have been the appropriate response to this situation. The request for Reese's identification was an unwarranted intrusion. *See Crowder v. United States,* 379 A.2d 1183 (D.C.1977) (officer's demand for identification was a sufficient "show of authority" to constitute a seizure). There is no general police right to stop a driver and ask for identification in the absence of specific articulable reasons indicating suspicion that an offense may have been, or is being, committed. There was no such articulable reason to be directed at the driver here. I would affirm the decision of the trial court.