**STATE of Minnesota, Appellant,**

**v.**

**Christopher John McKENZIE, Respondent.**

No. C4–86–693.

Court of Appeals of Minnesota.

Aug. 19, 1986.

Hubert H. Humphrey, III, Atty. Gen., Tom Foley, Ramsey Co. Atty., Steven C. DeCoster, Asst. Co. Atty., St. Paul, for appellant.

William E. Falvey, Chief Public Defender, Cynthia Daly, Asst. Public Defender, St. Paul, for respondent.

Considered and decided by SEDGWICK, P.J., and FORSBERG and LESLIE, JJ., with oral argument waived.

## OPINION

FORSBERG, Judge.

This is a pre-trial appeal by the State pursuant to Minn.R.Crim.P. 28.04, subd. 1(1) challenging a trial court order suppressing all evidence seized as a result of an improper investigatory stop. We reverse and remand for trial.

## FACTS

About 10:30 p.m. on January 21, 1986, North St. Paul Police Officer Scott Blasko was on patrol in a squad car. He observed two individuals sitting in a Plymouth Fury parked in the North St. Paul Municipal parking lot. In this lot, parking is allowed 24 hours a day, 12 hours at one time. Other cars were in the lot, but the Fury was the only one with people inside.

Officer Blasko went around the block and on his second pass he saw the Fury again; he observed that the two persons inside were male. Blasko pulled his squad car into the lot, pulled up behind the Fury, turned off his ignition and approached the driver's side. Blasko noticed that the Fury's engine was running. Blasko had personally made five arrests of persons using controlled substances in that parking lot in the prior three weeks. He testified that he approached the Fury because he wanted to see what the people were doing.

When asked, the driver replied they were, "Just leaving." As he said this, Blasko flashed his flashlight into the car and saw a gold metal case, approximately four inches by two inches in size. This case was similar in size and design to cases Blasko had seen used by individuals snorting cocaine. The passenger, respondent Christopher McKenzie, was asked what the case was and he replied, "Just a mirror."

Respondent then opened it up and said, "See, it's just a mirror." Blasko observed white powder, similar to cocaine, sprinkled on the mirror.

Respondent reached into his right jacket pocket and Blasko told the driver and respondent to put their hands on the dashboard. At first respondent only put his left hand up, and as he put his right hand up a white powder fell onto the dash. Blasko believed the powder fell from respondent's hand. Respondent repeatedly would not keep both hands on the dash and continually dropped things from his right jacket pocket to the floor and stuffed items into the back seat. The driver and respondent were subsequently arrested and the Fury was searched. Seized from the Fury were a black film canister containing 11 bindles of white powder, a decorative metal box containing four more bindles of white powder and one loose bindle stuffed into the rear seat behind where respondent had been sitting, and an empty bindle on the front floor of the passenger side. At respondent's booking, a bag of marijuana, marijuana rolling papers and a couple of razor blades were seized from his person.

Respondent was charged with possession of cocaine. At the omnibus hearing the trial court ordered all the evidence seized as a result of the encounter with Blasko suppressed. The trial court ruled that Blasko made an unlawful stop because he lacked a particularized and articulable objective basis to stop the vehicle under the principles of *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The State appealed.

## ISSUE

Did the trial court err in suppressing evidence due to an improper investigatory stop?

## ANALYSIS

■ The law differentiates between an investigatory stop of a moving vehicle and an investigation of an already stopped vehicle. *State v. Reese*, 388 N.W.2d 421 (Minn.Ct.App.1986). No seizure under the

fourth amendment takes place when an officer approaches an already stopped vehicle. *State v. Alesso,* 328 N.W.2d 685 (Minn.1982); *State v. Bourbeau,* 298 N.W.2d 126 (Minn.1980); *State v. Vohnoutka,* 292 N.W.2d 756 (Minn.1980); *State v. Krech,* 381 N.W.2d 898 (Minn.Ct.App. 1986); *Paulson v. Commissioner of Public Safety,* 384 N.W.2d 244 (Minn.Ct.App. 1986). *See* 3 W. LaFave, *Search and Seizure,* § 9.2(g) (1978).

■ It is unnecessary that an officer suspect criminal activity in these circumstances; further, the officer may seize contraband viewed in plain sight. *Reese.*

■ The officer may use a flashlight to illuminate the car's interior if the observation is made from a lawful vantage point. *Alesso,* 328 N.W.2d at 7; *Vohnoutka,* 292 N.W.2d at 757.

■ In this case, these two individuals sitting in the car were not free from being approached by a police officer asking them why they were parked there. There is simply no fourth amendment seizure in these circumstances. Finding no fourth amendment seizure, the subsequent discovery of the evidence seized from the Fury, resulting from the plain view observation of the mirror case, was constitutional and the evidence was improperly suppressed.

### DECISION

The trial court order suppressing the evidence seized as a result of the encounter with Officer Blasko is reversed and the case is remanded for trial.

Reversed and remanded.