Vikki **WIBBEN**, Petitioner
and Appellant,

v.

**NORTH DAKOTA STATE HIGHWAY COMMISSIONER**, Respondent
and Appellee.

Civ. No. 870018.

Supreme Court of North Dakota.

Sept. 29, 1987.

---

Hjellum, Weiss, Nerison, Jukkala, Wright & Paulson, Jamestown, for petitioner and appellant; argued by Thomas E. Merrick.

Myron E. Bothun, Asst. Atty. Gen., State Highway Dept., Bismarck, for respondent and appellee.

MESCHKE, Justice.

Vikki Wibben appeals from suspension of her driving privileges, claiming that the officer's "investigative stop" of her parked car was unreasonable. We affirm.

At 2:35 A.M. on October 12, 1986, a radio dispatch suggested that Officer Gerald Klosterman go to the parking lot at an apartment complex in Jamestown. The dispatcher relayed a call from an unidentified person who reported that a girl, seated there in a grey Pontiac with a Minnesota license and with the engine running, appeared to be sick or intoxicated. The caller did not say why the girl was thought to be in that condition.

At the parking lot, the officer found Wibben sitting in a car which fit the description, except the engine was not running. He was unable to tell whether she was sick or intoxicated; "she was just sitting behind the wheel."

The officer approached Wibben's car and tapped on the window with his flashlight. Wibben rolled down the window, and he asked her if she were okay. Wibben responded that she was okay and that she was waiting for a friend. The officer observed that the keys were in the ignition, that Wibben's eyes were red and bloodshot, and that her speech was slurred. He had Wibben step out of the car to perform some sobriety tests, which she failed. He arrested Wibben for actual physical control of a vehicle while intoxicated and took her to the police station. There, an Intoxilyzer test showed her blood-alcohol content was 0.15 percent.

At an administrative hearing on her license suspension under NDCC § 39–20–05, Wibben argued that the officer did not have a reasonable basis to "stop" her and ask questions. The hearing examiner con-

cluded that "Officer Klosterman had the grounds to believe Vikki Wibben violated section 39–08–01," and suspended her driving privileges for 91 days. Upon review under NDCC § 39–20–06, the district court affirmed the hearing examiner's decision. Wibben appeals, challenging the propriety of the officer's intrusion upon her privacy.

## I.

The parties disagree about the character of the officer's action. While the Highway Commissioner describes it as a "momentary intrusion ... inquiring as to Wibben's well being," Wibben insists it was an "investigatory stop" made without "a reasonable suspicion of unlawful conduct," thereby violating her Fourth Amendment protection against unreasonable search and seizure.

■ Whatever the officer's motive in tapping on Wibben's car window, a stop occurred. *Adams v. Williams,* 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972) (when police officer tapped on car window and asked occupant to open door and he responded by rolling down window, Supreme Court presumed "forcible stop" occurred, noting it was not claimed he "acted voluntarily in rolling down the window of his car"). An investigative stop is a seizure within the meaning of the Fourth Amendment. *Terry v. Ohio,* 392 U.S. 1, 19, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968). Thus, we measure the officer's conduct with the Fourth Amendment's "general proscription against unreasonable searches and seizures." *Id.* In so doing, we determine whether the circumstances warranted interference with Wibben's Fourth Amendment rights and, if so, whether the extent of the intrusion was reasonably related to those circumstances. *See United States v. Stevie,* 578 F.2d 204, 207 (8th Cir.1977).

## II.

### A.

For a legal investigative stop of a vehicle, an officer must have an articulable and reasonable suspicion that a law has been or is being violated.[1] *State v. Lykken,* 406 N.W.2d 664, 666 (N.D.1987); *State v. VandeHoven,* 388 N.W.2d 857, 858 (N.D. 1986). The factual basis for the stop need not be the officer's personal observations alone, but may arise from information furnished by other persons. *State v. Lykken, supra. See also Adams v. Williams, supra* (information from person known to officer justified investigative stop). Even an anonymous informant may supply sufficient information for a reasonable suspicion justifying a stop. *State v. Boushee,* 284 N.W.2d 423, 430 (N.D.1979); *United States v. McBride,* 801 F.2d 1045 (8th Cir. 1986). *See also Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) (Court upheld probable cause determination for a warrant, based in part on anonymous tip).

■ We have cautioned, however, that "[i]nformation supplied by an anonymous informant cannot alone establish probable cause for a warrant if the tip provides virtually nothing from which one might conclude that the informant is honest or that his information is reliable, or if the information 'gives absolutely no indication of the basis' " for identifying the criminal activities. *State v. Thompson,* 369 N.W.2d 363, 367 (N.D.1985) (citing *Illinois v. Gates, supra* ). Similarly, information from an anonymous informant used for an investigative stop must be sufficiently reliable to support a reasonable suspicion of unlawful conduct, though not the more exacting standard of probable cause necessary to make an arrest.

---

**1.** While this officer made the "stop" partly for a noncriminal, noninvestigatory purpose, *i.e.,* to determine whether Wibben was "okay," the "reasonable suspicion" standard still applies because the "stop" was also made partly for the purpose of crime detection. For decisions about stops solely for noncriminal purposes or for so-called "community caretaking functions," *see United States v. Dunbar,* 470 F.Supp. 704 (D.Conn.1979); *Crauthers v. State,* 727 P.2d 9 (Alaska Ct.App.1986); *Doheny v. Commissioner of Public Safety,* 368 N.W.2d 1 (Minn.Ct.App. 1985); *State v. Goetaski,* 209 N.J.Super. 362, 507 A.2d 751 (1986); *State v. Chisholm,* 39 Wash. App. 864, 696 P.2d 41 (1985).

The Minnesota Supreme Court recently considered a comparable case. In *Olson v. Com'r of Public Safety*, 371 N.W.2d 552 (Minn.1985), an anonymous informant reported a possible drunken driver, describing the car and its location. The court held the stop invalid, saying:

"On this record, there is a complete lack of even the most minimal indicia of reliability for the anonymous tip. If police cannot stop a car on the highway on the basis of mere whim, neither can they stop on the basis, for all they know, of the mere whim of an anonymous caller.

"... It would have been a simple matter for the dispatcher to have elicited some minimal specific and articulable facts from the anonymous caller to support the caller's bare assertion of a possibly drunk driver on the road. This, however, was not done, or, if it was done, the state has failed to show that it was. The fourth amendment stands as a protection against unreasonable intrusions on an individual's privacy and personal security, and if this protection is to have any efficacy, it applies here." *Id.* at 556.

*Compare State v. Newgard*, 392 N.W.2d 27 (Minn.App.1986) (anonymous phone tip about a drunken man stumbling on or near highway, who had responded with obscenities when asked if he needed help, was sufficient to justify investigative stop).

Relying on *Olson*, Wibben contends that if the anonymous caller had reported that Wibben had been observed reeking of alcohol, with glassy eyes or slurred speech, or stumbling, the investigative stop might have been proper, but without such communicated detail, it was not. · It may be doubtful whether this unidentified and unauthenticated tip, alone, would fulfill the requirement of reasonableness for the suspicion necessary to justify an investigative stop. *But see People v. Willard*, 183 Cal.App.3d Supp. 5, 228 Cal.Rptr. 895 (1986). And, *see also Illinois v. Gates, supra*, 462 U.S. at 237, 103 S.Ct. at 2332 ("Ordinary citizens, like ordinary witnesses ... generally do not provide extensive recitations of the basis of their everyday observations.").

But, in this case, we conclude that we do not need to decide whether bare information that a person appears "sick or drunk" carries enough indicia of reliability to investigate further. This officer personally verified most of the details of the tip by his own observations, including the fact that Wibben continued to be visibly seated in the car. The only unverified information was her actual condition—sick or intoxicated. Upon corroborating other details of the anonymous tip, we believe that this officer had sufficient information for a reasonable suspicion, particularly when we take into account inferences and deductions that an investigating officer would normally make. *State v. Lykken, supra*. Thus, this case is unlike *Olson, supra*, in that important aspect.

### B.

█ In assessing whether the circumstances warranted an investigative stop, we also consider whether the state's interest in investigating the officer's reasonable suspicion outweighs the person's Fourth Amendment interests. *See United States v. Hensley*, 469 U.S. 221, 105 S.Ct. 675, 679, 83 L.Ed.2d 604 (1985).

Here, the state did have a significant interest in the officer's determining Wibben's condition without delay. As one scholar has said about investigative stops:

"Because the very purpose of such stops is to clarify ambiguous situations, 'even if it was equally probable that the vehicle or its occupants were innocent of any wrongdoing, police must be permitted to act *before* their reasonable belief is verified by escape or fruition of the harm it was their duty to prevent.'" 1 LaFave, Criminal Procedure § 3.8, at 303 (1984) (citing *United States v. Holland*, 510 F.2d 453 (9th Cir.1975) (emphasis in original).

In *State v. Schuler*, 243 N.W.2d 367 (N.D.1976), this Court explained the importance of the "actual physical control" offense:

" 'It is our opinion that the legislature, in making it a crime to be in "actual physical control of a motor vehicle while

under the influence of intoxicating liquor," intended to enable the drunken driver to be apprehended before he strikes.'

" . . .

" 'We believe that an intoxicated person seated behind the steering wheel of a motor vehicle is a threat to the safety and welfare of the public. The danger is less than where an intoxicated person is actually driving a vehicle, but it does exist.' " *Id.* at 370 [quoting *Hughes v. State,* 535 P.2d 1023, 1024 (Okla.Crim. App.1975)].

Comparatively, Wibben's privacy interest was minimal. It is not commonplace to be visibly seated in a car in a parking lot at 2:35 A.M. during an October night. "The law enforcement interests at stake in these circumstances outweigh the individual's interest to be free of a stop and detention that is no more extensive than permissible in the investigation of imminent or ongoing crimes." *U.S. v. Hensley,* 469 U.S. at 229, 105 S.Ct. at 681.

We conclude that the state's interest in verifying the officer's reasonable suspicion outweighed Wibben's privacy interest. This intrusion on Wibben's privacy was justified.

### III.

Having determined that the circumstances warranted this intrusion, we easily conclude that the extent of the intrusion was reasonably related to those circumstances.

While no doubt the officer's approach was an investigative stop, it was respectful and equally designed to check on Wibben's well-being. While even such a minimal intrusion may risk creating inconvenience and "substantial anxiety," *see Delaware v. Prouse,* 440 U.S. 648, 657, 99 S.Ct. 1391, 1398, 59 L.Ed.2d 660 (1979), it will normally be brief and uneventful. The length of this one was brief from "stop" to arrest. *U.S. v. Hensley, supra.*

The officer sought to verify Wibben's condition in an unobtrusive way by merely tapping on her window and asking if she was okay. As a result of this reasonable and limited intrusion, additional facts became known to the officer, giving him probable cause to arrest Wibben.

We conclude that the officer had an articulable and reasonable suspicion that a crime was being committed and that the officer acted properly in investigating that suspicion.

Accordingly, we affirm.

ERICKSTAD, C.J., and LEVINE, J., concur.

LEVINE, Justice, specially concurring.

What if, in the sequel to this case, there is an identical anonymous tip that a person, seated in a parked vehicle, engine running, 2:35 in the morning, is either "drunk or sick"? But, when the police officer arrives at the location described by the tipster, the vehicle is being operated with no signs of erratic driving. Under those circumstances, I believe the officer would have no basis for an investigative stop of that vehicle. *State v. Lykken,* 406 N.W.2d 664 (N.D. 1987); *Olson v. Comm. of Public Safety,* 371 N.W.2d 552 (Minn.1985); *State v. Teigen,* 381 N.W.2d 529 (Minn.App.1986).

The point of the hypothetical is to illustrate that the tip in this case is, by itself, unreliable. Unlike the informant in *Adams v. Williams,* 407 U.S. 143, 92 S.Ct. 1921, 33 L.Ed.2d 612 (1972), the tipster here is unknown to the police; therefore, both his reliability and trustworthiness are absent. Only because there was corroboration by the police officer that the car was parked with the driver inside over some duration of time, did the officer have the requisite basis for an investigative stop. It is fair to say that in North Dakota, a driver seated in a car parked for a period of time at 2:35 in the morning raises a reasonable suspicion of actual physical control that warrants investigation. The officer's personal observation constituted the "further investigation" necessary to authorize a forcible stop when a tip is lacking in "indicia of reliability." *Adams v. Williams,* 407 U.S. at 147, 92 S.Ct. at 1924.

Nor do I believe that by citing the California case of *People v. Willard,* 183 Cal.

App.3d Supp. 5, 228 Cal.Rptr. 895 (1986), with a *but see* signal, the majority intends to approve even implicitly the California rule that a citizen's unverified tip is per se reliable. That is certainly not what we held in *State v. Lykken,* 406 N.W.2d 664 (N.D.1987); or *State v. VandeHoven,* 388 N.W.2d 857 (N.D.1986); or *State v. Thompson,* 369 N.W.2d 363 (N.D.1985). Nor should it be read into this case.

The policy of the fourth amendment is to minimize governmental confrontations with the individual. *United States v. Dunbar,* 470 F.Supp. 704 (D.Conn.1979). While that policy is not furthered by permitting police officers to stop citizens not remotely suspected of criminal activity, it should not prevent the police officer in this case, based upon the tip *and* his personal observation, from approaching the vehicle in question courteously and reasonably, in order to resolve his reasonable suspicion that the driver was "drunk or sick." There is no suggestion of pretext, or abusive conduct. I, therefore, concur.

VANDE WALLE, Justice, concurring in result.

The struggle the court has in reconciling the anonymous tip in this case appears to arise out of the characterization of the inquiry made by the police officer under the circumstances recited in the majority opinion as a "stop" which implements all the protections of the Fourth Amendment. It may be that is what Justice Rehnquist meant in writing for the majority in *Adams v. Williams,* 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972), when in reference to an officer's authority to make a forcible stop he noted, at footnote 1 of the opinion, that it was not contended that the defendant acted voluntarily in rolling down the window of his car. Perhaps that footnote now enshrines this inquiry as a Fourth Amendment "stop." I am not convinced that it is.

*Adams* relied, as does the majority opinion, on *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). In *Terry* Chief Justice Warren, writing for the majority, in concluding that the officer in that case had seized Terry and subjected him to a search when he took hold of him and patted down the outer surfaces of his clothing, observed at footnote 16 of the opinion:

"Obviously, not all personal intercourse between policemen and citizens involves 'seizures' of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred. We cannot tell with any certainty upon this record whether any such 'seizure' took place here prior to Officer McFadden's initiation of physical contact for purposes of searching Terry for weapons, and we thus may assume that up to that point no intrusion upon constitutionally protected rights had occurred."

To conclude that Justice Rehnquist in the footnote in *Adams* meant to imply, because it was not contended that the defendant "acted voluntarily in rolling down the window," that henceforth all such similar situations are, as a matter of law, assumed to be Fourth Amendment stops or seizures, is contrary to *Terry* and, for that matter, such a result is not supported by the facts in *Adams* which led to the conclusion that the stop in that case was a Fourth Amendment stop. One authority has observed that *Adams* does not meet head on the issue of whether or not such conduct constitutes a stop. In 3 W. LaFave, *Search and Seizure,* § 9.2(h) (1987), at footnote 202, the author observes that in *Adams* "the officer asked the suspect, seated in a parked car, to open the door, and when he instead rolled down the window the officer immediately searched for a gun. The Court merely observed that such a limited search was permissible whenever 'the officer is entitled to make a forcible stop,' and footnoted that proposition with the comment that the state 'does not contend that Williams acted voluntarily in rolling down the window of his car.'"

That same respected treatise would conclude that such a stop is not a stop subject to Fourth Amendment protection. LaFave indicates there is no seizure if, for example, the officer interrogates in a conversational manner, does not order the defendant to do

something or demand that he do it and does not ask questions which are overbearing or harassing in nature and does not make any threats or draw a weapon. On the other hand, the encounter becomes a seizure if the officer engages in conduct which a reasonable man would view as threatening or offensive if performed by another private citizen. 3 W. LaFave, *Search and Seizure*, § 9.2(h) (1987). LaFave observes this analytical approach is useful in those cases concerning police contact with persons seated within parked vehicles and states:

"... the mere approach and questioning of such persons does not constitute a seizure. The result is not otherwise when the officer utilizes some generally accepted means of gaining the attention of the vehicle occupant or encouraging him to eliminate any barrier to conversation. The officer may tap on the window and perhaps even open the door if the occupant is asleep. A request that the suspect open the door or roll down the window would seem equally permissible, but the same would not be true of an order that he do so. Likewise, the encounter becomes a seizure if the officer orders the suspect out of the car. So too, other police action which one would not expect if the encounter was between two private citizens—boxing the car in, approaching it on all sides by many officers, or use of flashing lights as a show of authority—will likely convert the event into a Fourth Amendment seizure." 3 LaFave, *Search and Seizure*, at 415–417. [Footnotes omitted.]

Minnesota, under somewhat different facts, cites with approval LaFave's conclusion that courts generally have held that it does not by itself constitute a seizure for an officer to simply walk up and talk to a driver sitting in an already stopped car. *State v. Alesso*, 328 N.W.2d 685 (Minn. 1982); *State v. Vohnoutka*, 292 N.W.2d 756 (Minn.1980). Cases from several other jurisdictions are cited by LaFave in support of the conclusion that activity such as we have present in this case does not constitute a Fourth Amendment seizure. A few

of those cases will serve to illustrate the point.

In *State v. Boswell*, 294 S.E.2d 287, 294 (W.Va.1982), the West Virginia Supreme Court, in holding that there was no seizure where a police officer approached a parked van, tapped on the window, and asked for identification, concluded:

"In determining the threshold question of whether the defendant has been seized, we look to the intensity of the initial inquiry. The less intense the initial inquiry the less likely that a seizure will be found. The intensity of the inquiry will determine whether the initial threshold of 'seizure' has been crossed."

In footnote 11 the West Virginia court explained that the term intensity "is designed to cover a variety of fact patterns which surround the initial inquiry between the police and the individual. It embraces the degree of physical intrusion but also more subtle means of coercion or intrusion including the number of officers involved, their demeanor, their conduct and the length of questioning of the defendant."

The New Mexico Appellate Court concluded that no seizure took place where an officer approached the defendant who was parked in his own driveway. *State v. Montoya*, 94 N.M.App. 542, 612 P.2d 1353 (1980). The Kansas Supreme Court reached a similar conclusion where an officer approached a parked car and put questions to the occupants. *State v. Marks*, 226 Kan. 704, 602 P.2d 1344 (1979).

LaFave further notes that "the confrontation is a seizure only if the officer adds to those inherent pressures by engaging in conduct significantly beyond that accepted in social intercourse. The critical factor is whether the policeman, even if making inquiries a private citizen would not, has otherwise conducted himself in a manner which would be perceived as a nonoffensive contact if it occured between two ordinary citizens." 3 W. LaFave at 412.

Here, in the words of the majority opinion, "The officer approached Wibben's car and tapped on the window with his flashlight. Wibben rolled down the window and he asked her if she were okay. Wibben

responded that she was okay and that she was waiting for a friend." The fact the officer received an anonymous tip is not relevant to the issue of whether or not there was a stop.

I cannot conclude that this was a stop, or seizure, which implicates the Fourth Amendment. I therefore would not reach the issue of whether or not the officer had an articulable and reasonable suspicion that a law had been violated and whether or not the officer could rely on the anonymous tip.

I concur in the result.

GIERKE, J., concurs.