**STATE of Minnesota, Respondent,**

v.

**Steven M. HANSON, Appellant.**

**No. C3–92–2329.**

Court of Appeals of Minnesota.

June 15, 1993.

---

Hubert H. Humphrey, III, Atty. Gen., St. Paul, James A. Terwedo, Scott County Atty., Thomas J. Harbinson, Asst. County Atty., Shakopee, for respondent, State of Minnesota.

Samuel A. McCloud, Dean S. Grau, Minneapolis, for appellant, Steven M. Hanson.

Considered and decided by RANDALL, P.J., and AMUNDSON and SCHULTZ,* JJ.

## OPINION

RANDALL, Judge.

On May 2, 1992, appellant Steven M. Hanson was arrested and charged with three counts of driving while under the

influence of alcohol in violation of Minn. Stat. § 169.121, subd. 1(a) (DWI), (d) (alcohol concentration of .10 or more), and (e) (.10 or more within two hours of driving) (1992). Appellant was also charged with one count of possession of marijuana in violation of Minn.Stat. § 152.027, subd. 3 (1993). A *Rasmussen* hearing was held on November 17, 1992, and appellant moved for suppression of the evidence, arguing the initial stop of appellant was unlawful. The trial court determined the stop was lawful and the evidence would not be suppressed. The case was submitted to the court on count II of the complaint, alcohol concentration of .10 or more, on stipulated facts, and appellant was convicted. *See State v. Lothenbach*, 296 N.W.2d 854, 856–57 (Minn.1980). On appeal, Hanson challenges the constitutionality of the initial stop and the admission of any evidence subsequently obtained. We reverse.

## FACTS

On May 2, 1992, at approximately 9:45 p.m., Deputy Kevin Studnicka of the Scott County Sheriff's Department was traveling eastbound on Highway 282 while on routine patrol. As he approached the intersection of County Road 15, Studnicka observed a van, with no lights on, stopped on the shoulder of the westbound lane of Highway 282. The officer observed a person, later identified as appellant, outside of the vehicle near the front passenger-side tire. The officer testified that he could not tell what appellant was doing. The officer made a U turn, activated his flashing red lights, and pulled in behind appellant's vehicle. At this point, appellant was in his car sitting in the driver's seat.

Studnicka testified on cross-examination that his purpose in activating his flashing red lights was to tell appellant he could not leave the scene. Studnicka testified he wanted to ask appellant "what was going on, what he was doing out here, if he was having car problems." The officer indicated he had no suspicions of any particular

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by

appointment pursuant to Minn. Const. art. VI, § 10.

criminal activity, but was basically curious as to why the car was stopped.

The officer approached the vehicle and asked to see appellant's driver's license. As appellant handed the officer his license, the officer noticed an open can of Michelob beer near the dash. The officer then asked appellant to accompany him to the squad car. While in the squad, the officer noticed an odor of alcohol. Studnicka asked if appellant had been drinking, and appellant said he had one or two beers earlier that day.

The officer administered several field sobriety tests, and appellant was unable to satisfactorily perform the tests. Appellant subsequently failed an "Alco Sensor" test, and the officer arrested appellant for DWI.

An intoxilyzer test revealed an alcohol concentration of .12 at 11:07 p.m.. In the process of inventorying the vehicle for impound, Studnicka discovered a plastic bag containing what was later determined to be 8.7 grams of marijuana.

## ISSUES

1. Did a Fourth Amendment seizure occur when the officer pulled in behind appellant's parked car with the overhead flashing red lights of the squad car activated for the purpose of warning the driver of the parked car not to leave the scene?

2. If a seizure occurred, was there a basis to support an articulable suspicion of criminal activity?

## ANALYSIS

### I.

In denying appellant's motion to suppress all evidence obtained subsequent to the initial stop and/or conversation, the trial court stated:

The Court finds that the officer had probable cause to stop and investigate whatever was occurring at the scene of that vehicle at [9:45 p.m.] at approximately six to seven miles from the closest town. He indicated what he had observed, which certainly could pique his curiosity. Beyond that, he inquired as to whether there was any difficult[y] or

problems. The officer's obligation is really two-fold, not only to investigate crimes but also to inquire as to whether there is any assistance needed by anyone. Someone could be sick, could be car problems, all kinds of things on the side of the road. * * * Obligation to patrol does not mean simply to arrest, or stop and arrest, but to see if they can offer assistance. The caselaw is pretty clear on that.

Based on all the testimony that has been heard at this hearing, the Court finds probable cause to stop, and what followed thereon, seeing the empty beer can and so forth, is all acceptable.

At the hearing, appellant conceded that if the initial approach/stop was legitimate, everything following the stop was also legitimate.

■ The Fourth Amendment provides:

[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated * * *.

U.S. Const.Amend. IV. A seizure has occurred when an officer, through physical force or show of authority, has in some way restrained the liberty of a citizen. *United States v. Mendenhall,* 446 U.S. 544, 552, 100 S.Ct. 1870, 1876, 64 L.Ed.2d 497 (1980).

Appellant concedes, and we agree, that no seizure within the meaning of the Fourth Amendment occurs when an officer walks up and talks to a driver sitting in an already stopped car. It is settled law in Minnesota that a peace officer does not even need the limited threshold of articulable suspicion of criminal activity to approach a parked car. *State v. Vohnoutka,* 292 N.W.2d 756, 757 (Minn.1980); *State v. Plut,* 400 N.W.2d 377, 379 (Minn.App.1987); *Blank v. Commissioner of Pub. Safety,* 358 N.W.2d 441, 442 (Minn.App.1984). It is of no consequence whether the engine of the car is running if the car is parked. *Plut,* 400 N.W.2d at 379; *see also Blank,* 358 N.W.2d at 443.

Appellant cogently argues the facts of this case and correctly points out that the

officer himself admits he did not merely approach an already stopped car, but instead pulled up behind a stopped car with red lights flashing with the purpose of sending a clear message to the driver (unknown at this point) not to leave. Appellant understood the officer's signal. Based on the undisputed facts, this case does not belong in the class of cases where an officer walks up to a parked car to converse with an occupant of the car.

When it reaches a certain level, an intentional show of authority by peace officers can be sufficient to transform a chance encounter into a "seizure" which then mandates, as part of the analysis, an examination of the safeguards of the Fourth Amendment. According to Professor LaFave, an encounter does not amount to a Fourth Amendment seizure merely because the citizen feels the moral and instinctive pressure to cooperate which may exist merely because the citizen is aware he is dealing with a police officer. 3 W. LaFave, *Search and Seizure* § 9.2(h), at 411–12 (2d ed. 1987). The encounter is a seizure "only if the officer adds to those inherent pressures by engaging in conduct significantly beyond that accepted in social intercourse." *Id.* at 412. Here, the specific facts show a deliberate use of authority (the flashing red lights) for the express purpose of telling someone not to leave the area. This fits within the definition of aggressive police conduct which converts the encounter into a Fourth Amendment seizure. *Id.* at 416–17 (citing *e.g., People v. Guy*, 121 Mich.App. 592, 329 N.W.2d 435 (1982) (though officer had not initially stopped the car, a seizure occurred when officer blocked the driveway so that the car could not leave)).

We note *State v. Sanger*, 420 N.W.2d 241 (Minn.App.1988), where an officer observed a black Camaro parked at the curb in a residential area of Moorhead at 11:30 p.m. The windows of the car were foggy and its sunroof was open. The officer saw people in both the front and back seat of the car and also saw movement. *Id.* at 242. The officer pulled the patrol car up next to the parked car so that the car was boxed in. The driver turned and looked at the officer and attempted to negotiate a way out by backing up less than two feet. The officer activated his flashing lights and honked his horn. When the officer approached the car "to see what was going on," he observed the driver was intoxicated and made an arrest for DWI. *Id.*

Relying on LaFave's analysis, this court concluded a seizure occurred. *Id.* at 242–43. Although the situation involved the approach of an already parked car, a seizure occurred because the officer made a "strong showing of authority far beyond the realm of private citizens' interactions." *Id.* at 243. The panel concluded the officer had no "articulable suspicion, and the stop (or seizure) was based on mere whim or caprice." *Id.* at 244. Thus, it held that the trial court erred by failing to suppress the evidence resulting from the stop and seizure and reversed. *Id.*

Appellant argues that here the flashing red lights were such a strong showing of authority that the approach of his vehicle was transformed into a seizure. The state points out that in *Sanger*, in addition to the flashing red lights, there were other aggressive actions taken by the police officer. The officer blocked the defendant's car and when the defendant attempted to move his car, the officer activated the lights *and* honked his horn. Here, appellant's car was not blocked. However, *Sanger* does not hold that unless there are flashing red lights, *and* a honking horn, *and* a car blocked, that its rationale cannot be used. Appellant argues that based upon the flashing red lights alone, a reasonable person would not feel free to leave. We agree. Further, we note the message sent by the officer was received by appellant. A reasonable person in appellant's position would feel he had been seized, he was not free to go, and that his liberty of movement was truly restricted. Appellant would have exposed himself to possible criminal charges by leaving. Fleeing a police officer in a motor vehicle is a misdemeanor or, for a second or subsequent offense, a felony. *See* Minn.Stat. § 609.487, subd. 3 (1992). For purposes of the statute, the term "flee" means:

to increase speed, extinguish motor vehicle headlights or taillights, or to use other means with intent to attempt to elude a peace officer *following a signal given by any peace officer to the driver of a motor vehicle.*

*Id.* at subd. 1 (emphasis added).

This officer wanted to force appellant to stay in place while he checked him out. Appellant understood that he was not free to leave until the officer checked him out. Nothing unusual or outside the scope of normal human events happened here. The police officer acted properly and appellant acted properly. No criticism is directed at the officer for activating his flashing red lights to hold appellant, and no criticism is directed at appellant for getting that message and staying put. It is simply our job to analyze whether the evidence gained during that seizure can be used to convict appellant of criminal conduct.

In *State v. Walp,* 65 Or.App. 781, 672 P.2d 374 (1983), the court reversed a DWI conviction where it found an illegal stop of the defendant. In that case, the police officers closely followed a vehicle they observed leaving the scene of a party. After some distance, the driver pulled onto the shoulder of the road and stopped. After the driver stopped, the officers turned on their overhead lights and pulled up behind the car. When the arresting officer approached the defendant and asked for her driver's license, he detected an odor of alcohol, and the defendant was arrested. *Id.* 672 P.2d at 374-75. The officer in *Walp* testified that he had observed no traffic violation, he did not suspect that a crime was being committed, and he approached the defendant to determine whether she was having mechanical difficulties. *Id.* at 375.

In *Walp,* the court determined there was no reasonable suspicion to believe that the defendant committed a crime. *Id.* The court went on to hold that the use of the emergency lights where the defendant was already stopped of her own volition constituted an unlawful stop. The court reasoned:

A reasonable person would not feel free to drive away once the officer turned on the emergency lights. Use of the overhead lights was a sufficient show of authority.

*Id.* Thus, because there was no articulable suspicion of a crime by the defendant, the officers had no lawful authority to take actions which would indicate to the defendant she was not free to leave, such as activating emergency lights.

In a similar case, *State v. Stroud,* 30 Wash.App. 392, 634 P.2d 316 (1981), *pet. for rev. denied,* 96 Wash.2d 1025 (1982), where police officers pulled up behind a parked car and switched on the flashing lights and high beam headlights, the court determined a seizure occurred. *Id.* 634 P.2d at 318. The circumstances amounted to

a show of authority sufficient to convey to any reasonable person that voluntary departure from the scene was not a realistic alternative.

*Id.* at 319. Because there was no articulable suspicion that the defendant was engaged in criminal activity, the seizure was unreasonable and therefore, unlawful. *Id.* at 320.

To support its position that there was no unlawful seizure here, the state cites *State v. Alesso,* 328 N.W.2d 685, 687 (Minn.1982) and *State v. Krech,* 381 N.W.2d 898, 899 (Minn.App.1986). These cases both concern application of the rule permitting an officer to routinely shine a flashlight into an automobile—*as long as the officer's position next to the automobile was lawfully acquired.* This rule does not resolve the issue here—whether the officers approach of the car was a seizure—because that very issue is subsumed in the flashlight rule. That is, the lawfulness of the officer's approach of appellant's vehicle must be resolved before the "flashlight" rule can be applied. The flashlight rule has no relevance here.

The state also cites *Crawford v. Commissioner of Pub. Safety,* 441 N.W.2d 837 (Minn.App.1989). In *Crawford,* the officer was following a vehicle which turned into a cul-de-sac. Because the officer did not see

the vehicle when she initially turned into the cul-de-sac, she "spotlighted" the cul-de-sac and then saw the car parked in the area. The officer pulled in behind or up to the side of the vehicle, got out of her vehicle and approached the parked car. Citing the principle of law that there is no seizure when an officer approaches and talks to a person in an already stopped vehicle, the court determined there was no unlawful stop. *Id.* at 839.

In *Crawford,* the court concluded the officer did not engage in behavior that would convert the encounter into a Fourth Amendment seizure. *Id.* In so concluding, the court compared the officer's conduct to the conduct of the officer in *Sanger,* 420 N.W.2d at 243 (seizure occurred when officer boxed in defendant's car, turned on flashing red lights, and honked horn). The state argues that the use of the flashing red lights in this case is analogous to the use of the spotlight in *Crawford.* We disagree. The facts in *Crawford* are analogous to the flashlight cases. *Crawford* did not involve the intentional show of authority as we had in *Sanger,* or here.

The state also cites the accepted proposition that an officer has a duty to make a reasonable investigation of a vehicle parked along a roadway to render assistance as might be needed and to inquire into the physical condition of anyone in the vehicle. *See Paulson v. Commissioner of Pub. Safety,* 384 N.W.2d 244, 245–46 (Minn.App.1986); *Kozak v. Commissioner of Pub. Safety,* 359 N.W.2d 625, 628 (Minn. App.1984) (citing *Vohnoutka,* 292 N.W.2d at 757); *Blank,* 358 N.W.2d at 443. Relying on these cases, the state argues the officer was merely performing his duty to render assistance as might be needed. This is the reasoning adopted by the trial court. The problem with attempting to justify this stop by the "render aid" analysis is that true stops to render aid never start with police "seizing" the car or the person. When a police officer wants to walk up to a stopped vehicle to render aid or to inquire if aid is needed, that is what he does. He walks up to it or stops by it and checks on whether aid is needed. He doesn't have to seize it to do that, would

never think of "seizing it" to do that, and it is incongruous to put the two together. Seizure is for known or suspected criminal activity and involves complying with the Fourth Amendment. Aid is a person-to-person humanitarian gesture and needs no legal justification. This is not a render aid case.

None of the render aid cases cited by the state address the issue of a show of authority by the police officer. None of the cases involve an officer intentionally using flashing red lights to hold a driver in place. Rather, in *Paulson,* 384 N.W.2d at 245, the officer approached an already parked car. That is lawful, but does not resolve our issue. In *Kozak,* 359 N.W.2d at 627, the officer approached a car parked on the shoulder of the road and pounded on the window to awaken the occupant. The opinion does not analyze the use of flashing red lights to hold the driver in place.

In *Doheny v. Commissioner of Pub. Safety,* 368 N.W.2d 1 (Minn.App.1985), this court held that a police officer's belief that a driver was lost did not justify the officer's actions in turning on his red lights and stopping the driver—even though the officer's intent was to lend assistance. As noted in *Doheny,* the risk of abuse when the state is given the latitude to seize drivers under the guise of inquiring as to whether they need aid is real. *Id.* at 2.

## II.

The state argues that even if the officer's actions amounted to a seizure, the seizure was supported by an adequate basis. Not every seizure is unreasonable so as to violate constitutional principles. A "limited investigative stop" is lawful if, at a hearing regarding the validity of the stop, the officer is able to articulate a " 'particularized and objective basis *for suspecting the particular person stopped of criminal activity.'* " *Appelgate v. Commissioner of Pub. Safety,* 402 N.W.2d 106, 108 (Minn.1987) (quoting *United States v. Cortez,* 449 U.S. 411, 417–18, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981) (emphasis added)); *see also Terry v. Ohio,* 392

U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968) (to justify intrusion officer must be able to point to "specific and articulable facts" which, in combination with rational inferences taken from those facts, reasonably warrant the intrusion). The officer's decision to make a stop should be based upon all of the circumstances. *Cortez*, 449 U.S. at 418, 101 S.Ct. at 695. A stop may not be based upon mere whim, caprice, or idle curiosity. *Marben v. State Dep't of Pub. Safety*, 294 N.W.2d 697, 699 (Minn. 1980).

 Here, the officer did not indicate, in either testimony or the complaint, that he suspected any criminal activity when he saw appellant outside of his van parked on the highway shoulder. To the contrary, the officer testified his purpose in holding appellant to the scene was simply to inquire what was going on, and what was he was doing there.

The state argues that because the van did not have its lights on, it was illegally parked, *see* Minn.Stat. § 169.53 (1992), and this fact provides an adequate basis for the stop. However, the officer did not stop the car because it was illegally parked. Officer Studnicka honestly stated his reason for activating his red lights when he came to the scene. He did not mention illegal parking. Further, the state did not present this theory to the trial court and raises the issue for the first time on appeal. Also, the state misinterprets the cases it cites to support this argument, *Berge v. Commissioner of Pub. Safety*, 374 N.W.2d 730 (Minn.1985); *State v. Speak*, 339 N.W.2d 741 (Minn.1983); *State v. Clark*, 394 N.W.2d 570 (Minn.App.1986). The common thread in those cases and all their progeny is that the officer sufficiently articulated some factual basis to support a suspicion of some *criminal activity*, whether by reasonable inference or firsthand observance. That essential element is totally lacking here. The officer testified there was no such suspicion.

We cannot allow "hindsight" to defeat the purpose of the Fourth Amendment which requires judges to scrutinize seizures and searches lest they be unreasonable. We conclude the seizure was not supported by an adequate basis and was unlawful.

### DECISION

The officer's actions in approaching appellant, although appellant was in a parked car, constitute a seizure within the meaning of the Fourth Amendment. Based on the flashing red lights, appellant believed he was not free to leave the scene.

Because there was a seizure, and because the seizure was not based on articulable suspicion of criminal activity, the evidence of DWI should have been suppressed. Appellant's conviction is reversed.

**Reversed.**