*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-1306**

State of Minnesota,
Appellant,

vs.

Paul Xiong,
Respondent.

**Filed April 1, 2024**
**Reversed and remanded**
**Smith, Tracy M., Judge**

Ramsey County District Court
File No. 62-CR-22-1296

Keith Ellison, Attorney General, St. Paul, Minnesota; and

John Choi, Ramsey County Attorney, Peter R. Marker, Assistant County Attorney, St. Paul, Minnesota (for appellant)

Mark D. Nyvold, Fridley, Minnesota (for respondent)

Considered and decided by Connolly, Presiding Judge; Smith, Tracy M., Judge; and Bratvold, Judge.

**NONPRECEDENTIAL OPINION**

**SMITH, TRACY M.**, Judge

In this pretrial prosecution appeal, appellant State of Minnesota argues that the district court erred for two reasons when it suppressed evidence of a firearm found in respondent Paul Xiong's vehicle. First, the state contends that the district court erroneously

concluded that law enforcement officers conducted an unlawful search of Xiong's vehicle by visually inspecting the interior of the vehicle through the driver's side window without reasonable, articulable suspicion. Second, the state contends that the district court erroneously concluded that the plain-view exception to the warrant requirement did not justify the seizure of the firearm observed in the vehicle. Because we conclude that the officers did not conduct an unlawful search of Xiong's vehicle and that the elements of the plain-view exception are established, we reverse and remand.

## FACTS

The facts below are taken from testimony and exhibits presented during the suppression hearing as well as from other documents in the district court and appellate records.

**Initial Investigation and Search Warrant**

An officer assigned to Ramsey County's violent crime enforcement team (VCET) received a tip from an informant that Xiong's brother was trafficking methamphetamine. For several weeks thereafter, VCET officers regularly conducted surveillance of Xiong's brother's house.

While surveilling the house, officers often observed a black Hummer slowly circling the block. Officers looked up the Hummer's license plate number and discovered that Xiong was the registered owner. Officers searched Xiong's criminal history and found that he had several convictions. Relevant to this appeal, officers discovered that Xiong had a prior conviction for felony domestic abuse—which officers knew rendered Xiong ineligible to possess a firearm—and a prior conviction for fifth-degree drug possession.

2

On multiple occasions during their surveillance, officers observed the following conduct involving the Hummer. The Hummer would pull into Xiong's brother's driveway, back out, drive around, and pull up next to the officers' vehicles, and the driver would look at the officers. According to VCET Officer Garland, this driving conduct was suggestive of "counter surveillance." When the Hummer pulled up to the officers' vehicles, officers saw the driver's face and observed that it matched the photo of the Hummer's registered owner, Xiong.

Officers obtained a search warrant for Xiong's brother's home. The search warrant did not identify Xiong's person, his vehicle, or his residence as places or objects to be searched or seized.

**Execution of the Search Warrant**

Officers executed the search warrant on the brother's home. Before execution of the warrant, Officer Garland witnessed Xiong's brother drive away in his truck in tandem with another vehicle. An officer followed the two cars to conduct a traffic stop.

Officer Garland also observed Xiong's Hummer leave Xiong's residence—which was across the street and a few houses down from his brother's house—and start to slowly circle the block. Officer Garland then departed the scene to assist at the traffic stop.

Xiong returned from circling the block and parked his vehicle on the street, outside his house. VCET Officer Amberg observed Xiong exit the vehicle and walk across the street to his brother's house. Officer Amberg detained Xiong on the front lawn of the brother's home to secure the scene during execution of the warrant. Thereafter, officers began to search the brother's home.

After officers' initial breach of the home, officers "cleared" the brother's house and garage to ensure they were safe. VCET Officer Mooney then went across the street to clear Xiong's vehicle. Specifically, Officer Mooney wanted to make sure that no one was inside the vehicle who could be a threat. When Officer Mooney looked through the driver's side window into the vehicle, he saw the butt of a pistol in the front passenger seat area. He did not open the door to look inside the vehicle, and he did not have to touch or move anything to see the firearm.

Officer Garland returned to the scene and, after the house was secure, he started taking pictures. Officer Garland was informed that there was a firearm in Xiong's Hummer, and he left the house to process the scene at the vehicle. He did not move anything to view the firearm, and he was able to see it through the window. Officer Garland took photos of the firearm in the vehicle, and he also took photos of the firearm after retrieving it from the vehicle. The firearm had a loaded magazine in it.

**Charges and Suppression Motion**

The state charged Xiong with possession of a firearm as an ineligible person in violation of Minnesota Statutes section 624.713, subdivision 1(2) (2020).

Xiong moved to suppress all evidence discovered "during the stop and search of his person and vehicle," arguing that officers "illegally detain[ed] him without reasonable suspicion, illegally search[ed] his vehicle without a warrant, and fail[ed] to videorecord the search of his vehicle." Following a suppression hearing, the district court issued an order granting Xiong's motion.

**Appellate History**

The state appealed the district court's pretrial order. Xiong moved to dismiss the appeal for the state's failure to include a description of the critical impact in its statement of the case. The state filed a response and motion to accept an amended statement of the case that included the critical impact. A special term panel of this court denied Xiong's motion to dismiss and ordered the state's amended statement of the case filed. After the deadline to file a cross-appeal had passed, Xiong filed a motion to accept late notice of cross-appeal, seeking to challenge the district court's ruling that his initial detention was lawful. A special term panel of this court denied Xiong's motion to accept a late notice of cross-appeal.

## DECISION

The state argues that the district court erred by granting Xiong's suppression motion because the district court erroneously concluded that (1) officers conducted an unlawful warrantless search of Xiong's vehicle when officers looked through its window and (2) the plain-view exception to the warrant requirement did not apply to the officers' seizure of the firearm.[1]

---

[1] Xiong does not dispute that the state has satisfied the threshold requirement of showing that the district court's order will have a critical impact on its ability to prosecute the case. *See State v. Scott*, 584 N.W.2d 412, 416 (Minn. 1998) (explaining that critical impact is required). The evidence that was suppressed—the firearm recovered from Xiong's vehicle—is the basis for the charge against him. As a result, the district court's suppression order will have a critical impact on the state's ability to prosecute Xiong. *See State v. Robb*, 605 N.W.2d 96, 99 (Minn. 2000) (concluding that the suppression of a firearm in a charge of unlawful possession of a firearm would have a critical impact on the outcome of the trial).

"[U]nreasonable searches and seizures" are prohibited by the United States and Minnesota Constitutions. U.S. Const. amend. IV; Minn. Const. art. I, § 10. Evidence obtained during an unconstitutional search or seizure must be suppressed. *See State v. Diede*, 795 N.W.2d 836, 842 (Minn. 2011). When reviewing a district court's decision on a pretrial motion to suppress evidence, appellate courts review the district court's factual findings for clear error and its legal determinations de novo. *State v. Bourke*, 718 N.W.2d 922, 927 (Minn. 2006).

## I. The district court erred by concluding that officers conducted an unlawful search of Xiong's vehicle.

The district court concluded that officers conducted an unlawful search of Xiong's vehicle when they peered into his vehicle through a window because officers did not have reasonable, articulable suspicion of wrongdoing to justify expanding the seizure of Xiong to search his vehicle. The state argues that the district court erred because officers did not conduct a search of Xiong's vehicle by merely peering into it and thus did not need reasonable, articulable suspicion of wrongdoing. We agree with the state.

A search occurs for Fourth Amendment purposes (1) "when the government physically intrudes onto a constitutionally protected area" or (2) "when the government intrudes upon a person's reasonable expectation of privacy." *State v. Edstrom*, 916 N.W.2d 512, 517 (Minn. 2018). "Warrantless searches are presumptively unreasonable unless one of 'a few specifically established and well-delineated exceptions' applies." *State v. Licari*, 659 N.W.2d 243, 250 (Minn. 2003) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)).

The district court concluded that officers conducted an unconstitutional warrantless search of Xiong's vehicle when they peered into it. The district court reached that conclusion by applying the law that applies to traffic stops. Under that law, the district court reasoned, because Xiong was detained, officers needed reasonable, articulable suspicion of wrongdoing before the stop could be expanded to include a search of his vehicle.

The district court's analysis, however, does not comport with the well-established principle that officers do not need reasonable suspicion or probable cause to merely look into a vehicle that is voluntarily parked in an area where officers have a right to be. In *State v. Vohnoutka*, an officer approached a voluntarily stopped car that was parked in a closed service station. 292 N.W.2d 756, 757 (Minn. 1980). The officer shined a flashlight into the car's passenger compartment, saw suspected marijuana in plain view, and then searched the car and discovered marijuana and hashish. *Id.* The district court suppressed the evidence on the basis that the flashlight-aided check of the car's passenger compartment was a warrantless search conducted without probable cause. *Id.* The supreme court reversed, concluding that the flashlight-aided check was not an unconstitutional search because the officer had not stopped or otherwise temporarily seized the car, and they had a right to be where they were when they looked through the window into the passenger compartment. *Id.*

Similarly, here, officers did not engage in an unlawful intrusion into Xiong's privacy when they looked through the window of Xiong's vehicle. Xiong had voluntarily parked his vehicle on a public street and left it; his vehicle had not been stopped by law

7

enforcement officers. It is true that Xiong was detained at his brother's residence, but officers lawfully detained Xiong because they were executing a search warrant there.[2] Officers also sought to clear the Hummer to ensure safety during execution of the warrant. They approached the vehicle on a public street, looked through the vehicle's window, and, without touching or moving anything, saw a firearm in plain view. Under *Vohnoutka*, this conduct did not constitute a search. *See also State v. Alesso*, 328 N.W.2d 685, 687 (Minn.

---

[2] We note that, in his brief, Xiong attempts to challenge the district court's ruling that his seizure and detention were lawful. But the question of whether Xiong was lawfully seized and detained is outside the scope of this appeal. Xiong failed to raise this issue by timely filing a notice of cross-appeal. *See* Minn. R. Crim. P. 28.04, subd. 3 (requiring a defendant who wants to "obtain review of any adverse pretrial" ruling to file "a notice of cross-appeal . . . within 10 days after the prosecutor serves notice of the appeal"). After the deadline had passed, he filed a motion to accept a late notice of cross-appeal to challenge the district court's ruling. A special term panel concluded that Xiong failed to establish good cause for an extension of the deadline to file and denied the motion. Xiong nevertheless argues that the issue is properly before us, citing *State v. Grunig*, 660 N.W.2d 134 (Minn. 2003). In *Grunig*, the supreme court stated that, even without filing a cross-appeal, "[a] respondent can raise alternative arguments on appeal in defense of the underlying decision when there are sufficient facts in the record for the appellate court to consider the alternative theories, there is legal support for the arguments, and the alternative grounds would not expand the relief previously granted." 660 N.W.2d at 137. Xiong's reliance on *Grunig* is misplaced. In *Grunig*, the issue was whether the respondent-state had waived an argument not made in the district court. *Id.* at 135. Further, the state had no right to file a cross-appeal in Grunig's appeal from his conviction. *Compare* Minn. R. Crim. P. 28.02, subd. 2 (providing rules for appeal as of right by a defendant), *with* Minn. R. Crim. P. 28.04 (providing rules for pretrial appeals by the state). Here, unlike in *Grunig*, Xiong made the same argument to the district court and the district court ruled adversely on that argument. Additionally, rule 28.04 is an exception to the general rule that a defendant has no right to pretrial review of an adverse ruling in a criminal case, and Xiong failed to comply with the rule. Further, this is not an issue of waiver because Xiong will have another chance to challenge the adverse ruling in a future appeal from conviction should that occur. We therefore conclude that *Grunig* does not enable Xiong to obtain review of an adverse pretrial ruling without following the only rule entitling him to pretrial review. Xiong has failed to show how this court may reconsider the district court's decision that he was lawfully detained. Therefore, we decline to address the issue.

1982) ("In numerous cases we have upheld against fourth amendment challenge the practice of police officers routinely shining flashlights into automobiles, the only exception being when the officers unlawfully acquire their position vis-à-vis the vehicles, as when they unlawfully stop cars."). Officers therefore did not need reasonable, articulable suspicion of wrongdoing to peer inside Xiong's parked vehicle on the street.

As a result, the district court's legal conclusion that officers conducted an unlawful search by looking into Xiong's vehicle without reasonable, articulable suspicion of wrongdoing is erroneous.[3]

## II.     The district court erred by concluding that the plain-view exception to the warrant requirement did not apply to the seizure of the firearm.

The state argues that the district court also erred by concluding that the plain-view exception did not apply to justify the warrantless seizure of the firearm in Xiong's vehicle. The state contends that the district court misapplied the law by essentially requiring an "inadvertent discovery" element that is not recognized as part of the plain-view exception. It asserts that, when the three actual elements of the plain-view exception are applied, the exception was met and justified the warrantless seizure of the firearm.

The state contends that the district court functionally imposed an inadvertent-discovery requirement when it twice observed that the officers "targeted" Xiong's vehicle and wrote that this was not "a situation where an officer was merely walking on the sidewalk or on the street and happened to see a handgun in a random vehicle." As the state

---

[3] Because we conclude that officers did not conduct a search by peering into Xiong's vehicle, we need not address the state's alternative argument that, even if reasonable suspicion were required, the officers had it.

observes, the United States Supreme Court wrote in 1990 that "even though inadvertence is a characteristic of most legitimate 'plain-view' seizures, it is not a necessary condition." *Horton v. California*, 496 U.S. 128, 130 (1990). And recent caselaw from the Minnesota Supreme Court does not identify inadvertence as a necessary factor in the plain-view analysis. Rather, as expressed in *State v. Milton*, the plain-view exception has three elements: "(1) the police are legitimately in the position from which they view the object; (2) they have a lawful right of access to the object; and (3) the object's incriminating nature is immediately apparent." 821 N.W.2d 789, 799 (Minn. 2012) (quotation omitted); *see also, e.g.*, *State v. Chute*, 908 N.W.2d 578, 583 n.2 (Minn. 2018) (identifying the same three elements). Because inadvertence is not a factor, whether the officers "targeted" Xiong's vehicle is not a relevant consideration.

The state contends that, when the three proper elements are applied, the plain-view exception was established. We agree. First, the officers were standing on a public street, next to Xiong's voluntarily parked car, and thus were legitimately in the position from which they viewed the firearm. *See Vohnoutka*, 292 N.W.2d at 757. Second, the officers had a lawful right of access to the object under the automobile exception because, upon observing the firearm, they had probable cause to believe contraband was in the vehicle. *See State v. Flowers*, 734 N.W.2d 239, 248 (Minn. 2007) ("When probable cause exists to believe that a vehicle contains contraband, the Fourth Amendment permits the police to search the vehicle without a warrant."); *State v. Munoz*, 385 N.W.2d 373, 376 (Minn. App. 1986) ("Upon observing evidence in plain view, a warrantless search of the remainder of the passenger compartment is justified."). Finally, the incriminating nature of the firearm

was immediately apparent because officers immediately recognized the object as a firearm and knew that Xiong was prohibited from possessing a firearm. We therefore conclude that the district court erred by determining that the plain-view exception to the warrant requirement did not justify the warrantless seizure of the firearm.

For these reasons, we reverse the district court's suppression order and remand for further proceedings.[4]

**Reversed and remanded.**

---

[4] We note that, in the district court, Xiong advanced another argument for why the firearm should be suppressed. He contended that, under *State v. Scales*, 518 N.W.2d 587 (Minn. 1994), the firearm must be suppressed because the search of his vehicle was not video recorded. The district court did not address Xiong's *Scales* argument because it suppressed the evidence on constitutional grounds. On remand of this case, the district court should address Xiong's *Scales* argument should he still pursue it.